No. 19-3250

# In the United States Court of Appeals for the Sixth Circuit

---

SARAH R. LEE, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiff-Appellant*,

v.

OHIO EDUCATION ASSOCIATION, ET AL.,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Northern District of Ohio, Eastern Division
Case No. 1:18-cv-1420-JRA

---

## OPENING BRIEF FOR APPELLANT SARAH R. LEE

---

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940
jonathan@mitchell.law

*Counsel for Appellant Sarah R. Lee*

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: **19-3250**       Case Name: Lee v. Ohio Education Association, et al.

Name of counsel: Jonathan F. Mitchell

Pursuant to 6th Cir. R. 26.1, Sarah R. Lee

*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
     identity of the parent corporation or affiliate and the relationship between it and the named
     party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
     in the outcome?  If yes, list the identity of such corporation and the nature of the financial
     interest:

No.

## CERTIFICATE OF SERVICE

I certify that on _____ April 16, 2019 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Jonathan F. Mitchell

Counsel for Appellant Sarah R. Lee

_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Disclosure statement ........................................................................... i

Table of contents ............................................................................... ii

Table of authorities ..........................................................................iv

Statement regarding oral argument .....................................................viii

Statement of jurisdiction ....................................................................3

Statement of the issues ......................................................................3

Standard of review .............................................................................5

Statement of the case .........................................................................5

Summary of the argument ....................................................................9

Argument ........................................................................................ 11

    I.    Wrongfully taken property must be returned, even if it was taken in good faith ............................................................ 13

        A.    Property taken in violation of another's constitutional rights must be returned, even if the defendant took the property in good-faith reliance on a statute or court ruling ......14

        B.    *Wyatt v. Cole* precludes courts from recognizing a "good faith" defense under 42 U.S.C. § 1983 when the most analogous common-law tort rejects any consideration of the tortfeasor's state of mind ...................................................26

        C.    Neither qualified immunity nor good faith provides a defense against equitable claims............................................. 28

    II.    The union's appeal to principles of equality and fairness does not allow it to keep the money that it took from Ms. Lee in violation of her constitutional rights...................................35

        A.    There is nothing unfair or inequitable about requiring the union to return the money that it took from Ms. Lee in violation of her constitutional rights ........................................35

B. The union is proposing a "good faith" defense that extends far beyond the qualified immunity available to government officers ................................................................. 37

III. Even if the union could assert a "good faith" defense, it must show that its agency shops complied with *Abood* and pre-*Janus* law ............................................................................. 40

IV. Even if the union could somehow establish a good-faith defense to liability under 42 U.S.C. § 1983, Ms. Lee remains entitled to a refund under the state tort of conversion, which has no good-faith defense ....................................................................... 43

V. The courts that have rejected post-*Janus* refund lawsuits have not refuted Ms. Lee's arguments ....................................... 44

Conclusion .................................................................................................. 46

Certificate of compliance ......................................................................... 47

Certificate of service ................................................................................. 48

Addendum ..................................................................................................

# TABLE OF AUTHORITIES

## Cases

*Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) ................................. 4, 7, 41

*Akers v. Maryland State Education Ass'n*, 2019 WL 1745980 (D. Md.) .................. 44

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................... 31

*Babb v. California Teachers Ass'n*, 2019 WL 2022222 (C.D. Cal. 2019).................45

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................32

*Bermudez v. Service Employees Int'l Union, Local 521*,
    2019 WL 1615414 (N.D. Cal.)........................................................................44–45

*Bowen v. Massachusetts*, 487 U.S. 879 (1988)....................................................29, 30

*Brown v. Bathke*, 566 F.2d 588 (8th Cir. 1977) .......................................................29

*Carey v. Inslee*, 364 F. Supp. 3d 1220 (W.D. Wash. 2019) ..................................... 44

*Central States, Southeast and Southwest Areas Health and Welfare Fund
    by Bunte v. American Int'l Group, Inc.*, 840 F.3d 448 (7th Cir. 2016) .................33

*Chauffeurs, Teamsters & Helpers, Local 391 v. Terry*,
    494 U.S. 558 (1990) ......................................................................................30

*Chicago, Indianapolis, & Louisville Ry. Co. v. Hackett*,
    228 U.S. 559 (1913).......................................................................................43

*Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008) .........................20, 22, 23

*Cook v. Brown*, 364 F. Supp. 3d 1184 (D. Oregon) ................................................ 44

*Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996 (D. Alaska 2019) ............................ 44

*Danielson v. Inslee*, 340 F. Supp. 3d 1083 (W.D. Wash. 2018) .......................... 35, 44

*DeCecco v. United States*, 485 F.2d 372 (1st Cir. 1973) ...............................17, 23, 25

*Dice v. White Family Cos.*, 878 N.E.2d 1105 (Ohio App. 2007) ........................28, 43

*Downs v. Sawtelle*, 574 F.2d 1 (1st Cir. 1978).......................................................... 13

*Erickson v. Pardus*, 551 U.S. 89 (2007) ................................................................. 31

*Franklin v. Fox*, 2001 WL 114438 (N.D. Cal. Jan. 22, 2001) ............................... 8, 37

*Gilpin v. American Federation of State County and Municipal Employees AFL-CIO*, 875 F.2d 1310 (7th Cir. 1989) ............................................................ 24

*Gomez v. Toledo*, 446 U.S. 635, 641 (1980) ............................................................ 42

*Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002) ................... 33

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ................................................................ 1

*Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993) ............................... passim

*Hoffman v. Inslee*, No. 14-CV-200 (MJP), 2016 WL 6126016 (W.D. Wash. Oct. 20, 2016) ............................................................................................ 25

*Hough v. SEIU Local 521*, 2019 WL 1274528 (N.D. Cal.) ...................................... 44

*Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983) ................................................. 13

*Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018) .......................................... 1, 3, 6, 36

*Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 2019 WL 1239780 (N.D. Ill.) ....................................... 45

*Jarvis v. Cuomo*, 660 Fed. App'x 72 (2d Cir. 2016) ................................................ 24

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994) ............................................................................. 7, 12, 22

*Lovell v. One Bancorp*, 878 F.2d 10 (1st Cir. 1989) ................................................ 13

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ................................................. 11

*Messerschmidt v. Millender*, 565 U.S. 535 (2012) .................................................. 19

*Miller v. Board of Education of Lincoln County*, 450 F. Supp. 106 (S.D. W. Va. 1978) ................................................................... 29

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) ............................................ 39

*Montanile v. Board of Trustees of the National Elevator Industrial Health Benefit Plan*, 136 S. Ct. 651 (2016) ....................................................................... 34

*Mooney v. Illinois Education Ass'n*, 372 F. Supp. 3d 690 (C.D. Ill. 2019) ............... 44

*Moore v. Regents of the University of California*, 793 P.2d 479 (Cal. 1990) ............... 21

*Morissette v. United States*, 342 U.S. 246 (1952) .............................................. 26, 28

*Neely v. United States*, 546 F.2d 1059 (3d Cir. 1976) ....................................17, 23, 25

*Nelson v. Colorado*, 137 S. Ct. 1249 (2017)........................................................ 10, 17

*Norton v. Shelby County*, 118 U.S. 425 (1886)............................................................43

*Owen v. City of Independence*, 445 U.S. 622 (1980) ........................................ 38, 39s

*Pasha v. United States*, 484 F.2d 630 (7th Cir. 1973) ...................................... passim

*Pinsky v. Duncan*, 79 F.3d 306 (2d Cir. 1996) ........................................... 7, 12, 22

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946).................................................30

*Richardson v. McKnight*, 521 U.S. 399 (1997) .........................................................12

*Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006).........................33

*Sterling v. United States*, 749 F. Supp. 1202 (E.D.N.Y. 1990)..................................32

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ....................................................31

*Timbs v. Indiana*, 139 S. Ct. 682 (2019)...................................................................19

*Tull v. United States*, 481 U.S. 412 (1987) ...............................................................30

*United States v. Holmes*, 822 F.2d 481 (5th Cir. 1987)................................17, 23, 25

*United States v. Lane Labs-USA Inc.*, 427 F.3d 219 (3d Cir. 2005).........................32

*United States v. Lewis*, 342 F. Supp. 833 (E.D. La. 1972) ....................................... 17

*United States v. Lewis*, 478 F.2d 835 (5th Cir. 1973)................................... 16, 23, 25

*United States v. Rayburn House Office Building Room 2113 Washington DC 20515*, 497 F.3d 654 (D.C. Cir. 2007)................................................... 2, 18, 24

*United States v. Search of Music City Marketing, Inc.*, 212 F.3d 920 (6th Cir. 2000) ...............................................................................18

*United States v. Summa*, 362 F. Supp. 1177 (D. Conn. 1972)............ 17, 18, 23–24, 25

*United States v. Venneri*, 782 F. Supp. 1091 (D. Md. 1991) ............................. passim

*United States v. Windsor*, 570 U.S. 744 (2013) ......................................... 2, 9, 16, 25

*Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*, 76 F.3d 692 (6th Cir. 1996) ........................................................................ 7, 12, 23

*Wileman Bros. & Elliott v. Espy*, 58 F.3d 1367 (9th Cir. 1995).................... 25, 29, 30

*Winner v. Rauner,*
    No. 15-CV-7213, 2016 WL 7374258 (N.D. Ill. Dec. 20, 2016) ..........................25

*Wood v. Strickland,* 420 U.S. 308 (1975) ...................................................................29

*Wyatt v. Cole*, 504 U.S. 158 (1992)................................................................. passim

*Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993) ................................................. passim

## Statutes

28 U.S.C. § 1291.........................................................................................................3

28 U.S.C. § 1331 ........................................................................................................3

42 U.S.C. § 1983................................................................................... passim

## Other Authorities

William Baude & Eugene Volokh, *Compelled Subsidies and the First
    Amendment*, 132 Harv. L. Rev. 171 (2018) ........................................................12

Mark R. Brown, *Correlating Municipal Liability and Official Immunity
    Under Section 1983*, 1989 U. Ill. L. Rev. 625 ....................................................39

Dobbs, Law of Remedies (2d ed. 1993)...............................................................30

Richard A. Epstein, *Torts* (1999) ...........................................................10, 21, 26, 36

IRS Revenue Ruling 2013-17 ...............................................................................16

Sheldon Nahmod, *The Emerging Section 1983 Private Party Defense*,
    26 Cardozo L. Rev. 81 (2004).........................................................................8, 36

Restatement (First) of Restitution........................................................................33

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Sarah R. Lee respectfully requests oral argument, as the issues in this case are sufficiently important and complex to warrant argument time.

In *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), the Supreme Court held that the Constitution forbids public-sector unions to take "fair-share fees" from the wages of non-union members unless the employee clearly and affirmatively consents to pay. The holding of *Janus* is retroactive,[1] and Ms. Lee has sued for a refund of the "fair-share fees" that the union took from her wages. The union claims that it cannot be forced to return this money, notwithstanding the retroactivity of *Janus*, because it relied on pre-*Janus* statutes and court rulings that purported to authorize these unconstitutional exactions. The district court agreed and dismissed the plaintiff's claims, holding that the union's "good faith" reliance on pre-*Janus* statutes and case law allows it to keep the money that it took in violation of Ms. Lee's constitutional rights. *See* Memorandum of Opinion and Order, R. 56, Page ID # 724–27.

The district court's ruling is mistaken. When the Supreme Court announces a new constitutional right and makes it retroactive, a defendant's good-faith reliance on earlier statutes or court rulings can confer an immunity from *damages. See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

---

1. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96 (1993) ("[A] rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law.").

would have known."); *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993) (recognizing a similar defense for private parties who violate 42 U.S.C. § 1983 in reliance on a statute that is later declared unconstitutional). But neither qualified immunity nor good faith will ever allow a defendant to escape *restitution* of the money or property that it took in violation of another's constitutional rights. Taxes, criminal fines, victim's restitution, and private property that are seized in good faith—and in reliance on statutes or court rulings that are only later pronounced unconstitutional—must be restored when the victim demands their return, regardless of whether the defendant acted in good faith, and regardless of whether the defendant acted before the courts had clearly established the illegality of its conduct. *See, e.g.*, *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 98–99 (1993) (taxes); *United States v. Windsor*, 570 U.S. 744, 753, 775 (2013) (taxes); *United States v. Lewis*, 478 F.2d 835, 836 (5th Cir. 1973) (fines); *United States v. Venneri*, 782 F. Supp. 1091, 1092 (D. Md. 1991) (victim's restitution); *Wyatt v. Cole*, 994 F.2d 1113, 1115 (5th Cir. 1993) (property seized pursuant to an unconstitutional replevin statute); *United States v. Rayburn House Office Building Room 2113 Washington DC 20515*, 497 F.3d 654, 656, 665 (D.C. Cir. 2007) (property seized pursuant to an unconstitutional search warrant). Good faith can provide an immunity from damages if the victim sues over the collateral harms (such as emotional distress or economic loss) caused by the unconstitutional seizure of her property. But it will never allow someone who takes another's money

or property in violation of the Constitution to *keep* that property if the plaintiff sues for its return.

## STATEMENT OF JURISDICTION

The district court's jurisdiction rests on 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because the plaintiff has sued under 42 U.S.C. § 1983 to recover fair-share fees that were taken in violation of the First and Fourteenth Amendments. *See Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018).

The appellate jurisdiction of this Court rests on 28 U.S.C. § 1291 because the plaintiff has appealed a final judgment. *See* Judgment Entry, R. 57, Page ID # 728. The district court entered its judgment on March 25, 2019, and the plaintiff filed her notice of appeal later that day. *See id.*; Notice of Appeal, R. 58, Page ID # 729.

The appeal is from an order and final judgment that adjudicated all of the claims with respect to all parties, and no parties or issues remain in the district court.

## STATEMENT OF THE ISSUES

1. *Janus* declared that the Constitution forbids public-sector unions to take "fair-share fees" from non-union members, and its holding is retroactive. The union, however, is asserting a "good faith" defense that resembles qualified immunity, and it argues that its good-faith reliance on pre-*Janus* statutes and court rulings should allow it to keep the fair-share fees that it took in violation of the plaintiff's constitutional rights. The plaintiff contends

that defenses such as qualified immunity and "good faith" can shield a defendant only from damages and not restitution, and that they do not allow defendants to enrich themselves by keeping the money or property that they took in violation of the Constitution. The issue presented is:

> Is a defendant who takes another person's money or property in violation of the Constitution—but in good-faith reliance on a statute or court ruling that purported to authorize its conduct and is only later declared unconstitutional—permitted to *keep* that money or property when the owner sues for its return?

2.  The text of 42 U.S.C. § 1983 makes no allowance for a "good faith" defense. The union, however, has argued that principles of equality and fairness should allow it to assert a good-faith defense in this case because: (a) The union collected fair-share fees in reliance on statutes and court rulings that purported to authorize its conduct; and (b) The union should enjoy the same immunities as the government officers who established and enforced the unconstitutional agency shops. The issue presented is:

> Does the union's appeal to principles of equality and fairness support a good-faith defense under the circumstances of this case?

3.  The Supreme Court's pre-*Janus* case law allowed public-sector unions to collect "fair-share fees" from non-members, but it prohibited the unions from using any portion of those fees for political or ideological activities. *See Abood v. Detroit Board of Education*, 431 U.S. 209, 239–40 (1977). The union asserts that it acted in good faith by obeying pre-*Janus* case law, but it of-

fered no evidence to demonstrate its compliance with *Abood* and other pre-*Janus* decisions. The issue presented is:

> Can the union establish that it acted in "good faith" compliance with pre-*Janus* case law when it failed to produce any evidence that it complied with *Abood* and pre-*Janus* rulings that governed the collection and use of agency fees?

4. The plaintiff argued that she should recover "fair-share fees" from the union not only under 42 U.S.C. § 1983, but also under the state-law tort of conversion, which has no good-faith defense and imposes strict liability on those who take property in violation of another's legal or constitutional rights. The district court, however, refused to address the plaintiff's state common-law arguments and dismissed the case without ever discussing those issues. The issue presented is:

> Has the plaintiff stated a claim on which relief may be granted under the state-law tort of conversion?

## STANDARD OF REVIEW

Each of the issues presents a question of law subject to de novo review.

## STATEMENT OF THE CASE

Sarah R. Lee is a public-school teacher in the Avon Lake City School District. Before the Supreme Court's ruling in *Janus*, Ms. Lee worked in an "agency shop," where she was compelled to either join the Ohio Education Association or pay "fair-share fees" to the union as a condition of employment. Ms. Lee refused to join the OEA because she disapproves of its political advocacy. But because she worked in an agency shop, Ms. Lee was com-

pelled to pay "fair-share fees" to the OEA and its affiliates against her wishes.

On June 25, 2018, Ms. Lee sued the Ohio Education Association, the Avon Lake Education Association, and the National Education Association (collectively, "the union"), and demanded a halt to the compulsory payment of "fair-share fees." *See* Complaint, R. 1, Page ID # 1–11. Ms. Lee also demanded a refund of the "fair-share fees" that the union had previously taken from her wages. *See id.* Finally, Ms. Lee challenged the constitutionality of the statutes and collective-bargaining agreements that purported to authorize agency shops, and she named the Avon Lake City School District and several state officials as defendants. *See id.*

On June 27, 2018, the Supreme Court announced that public-sector agency shops violate the constitutional rights of public employees. *See Janus*, 138 S. Ct. at 2478. The Supreme Court further held that the Constitution forbids public-sector unions to take money from the paychecks of non-union members unless they "clearly and affirmatively consent before any money is taken." *Id.* at 2486. The union stopped diverting fair-share fees from Ms. Lee's wages in response to *Janus*. Ms. Lee voluntarily dismissed her claims against the state officials and did not oppose dismissal of the Avon Lake City School District, leaving only her claims against the union to be decided by the district court.

On September 10, 2018, the union moved to dismiss Ms. Lee's claims under Rules 12(b)(1) and 12(b)(6) of the federal rules of civil procedure. *See*

Mem. of Union Defs. in Support of Mot. to Dismiss, R. 37-1, Page ID # 351–76. The union argued that its decision to comply with *Janus* had mooted Ms. Lee's claims for declaratory or injunctive relief. *See* R.37-1, Page ID # 360–65. The union also argued that it should not be compelled to return the "fair-share fees" that it had taken before *Janus*—even though it had taken these fees in violation of Ms. Lee's constitutional rights. *See* R.37-1, Page ID # 365–75. The union claimed that it had relied on Ohio statutes and pre-*Janus* court rulings that purported to authorize these unconstitutional exactions from Ms. Lee's wages. *See* R.37-1, Page ID # 368–69 (citing Ohio Rev. Code § 4117.09(C) and *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977)). And the union argued that its reliance on these pre-*Janus* authorities should immunize it from refund lawsuits—even though the text of 42 U.S.C. § 1983 requires the repayment of money taken in violation of another's constitutional rights. *See* R.37-1, Page ID # 368–72.

The union cited cases from other federal courts of appeals that have recognized a "good faith" defense for private parties who violate 42 U.S.C. § 1983 before the courts have clearly established the illegality of their conduct. *See* R.37-1, Page ID # 367 (citing *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993); *Clement v. City of Glendale*, 518 F.3d 1090, 1096–97 (9th Cir. 2008); *Pinsky v. Duncan*, 79 F.3d 306, 311–12 (2d Cir. 1996); *Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*, 76 F.3d 692, 698–99 (6th Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275–78 (3d Cir. 1994)).

The union also argued that it would be unfair and inequitable to order a refund of the fair-share fees that it took in violation of Ms. Lee's constitutional rights. *See* Mem. of Union Defs. in Support of Mot. to Dismiss, R. 37-1, Page ID # 367–68. The union claimed that it would be "unfair" to impose "'damages liability on private defendants whose honest and reasonable belief in the constitutionality of their conduct turns out later to have been mistaken.'" R. 37-1, Page ID # 368 (quoting Sheldon Nahmod, *The Emerging Section 1983 Private Party Defense*, 26 Cardozo L. Rev. 81, 91 (2004)). The union also claimed that it would be inequitable to deny the union a good-faith defense because the state officials who authorized and enforced the unconstitutional agency shops would have qualified immunity in a lawsuit for money damages. *See* Mem. of Union Defs. in Support of Mot. to Dismiss, R. 37-1, Page ID # 367–68 (quoting *Franklin v. Fox*, 2001 WL 114438, at *5 (N.D. Cal. Jan. 22, 2001)).

The district court agreed with the union and held that the "good faith" defense precludes Ms. Lee from recovering the fair-share fees that were taken in violation of her constitutional rights. *See* Memorandum of Opinion and Order, R. 56, Page ID # 726–27. Ms. Lee is appealing that decision.[2]

---

2. The district court also held that Ms. Lee's claims for declaratory and injunctive relief against the union had been mooted by *Janus*. *See* Memorandum of Opinion and Order, R. 56, Page ID # 724–26. Ms. Lee is not appealing that aspect of the district court's ruling.

## SUMMARY OF THE ARGUMENT

Property that has been taken in violation of another's constitutional rights must be returned—*even if* the defendant took the property in good faith, and *even if* the defendant relied on a statute or court ruling that purported to authorize its unconstitutional conduct. A defendant's "good faith" can shield it from damages for any collateral harms inflicted by its unconstitutional seizure of another's property, such as emotional distress or economic harm. But it will never permit a defendant to escape *restitution* of the wrongfully taken property, and it will never allow a defendant to enrich itself by *keeping* the property that it took in violation of another's constitutional rights. That remains the case even if the defendant took the property at a time when its actions were authorized by a statute or court decision that is later declared unconstitutional.

This principle is ubiquitous in American law. Taxes that are collected under a statute that is later declared unconstitutional must be returned, even if the taxing authorities relied in good-faith on that statute before it was pronounced unconstitutional. *See United States v. Windsor*, 570 U.S. 744, 753, 775 (2013); *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 98–99 (1993). Criminal fines imposed under an unconstitutional statute must be returned, even if the fines were collected in good faith and before the statute was pronounced unconstitutional. *See, e.g.*, *United States v. Lewis*, 478 F.2d 835, 836 (5th Cir. 1973). Even victim-restitution awards must be returned if the statute on which the conviction is based is later declared unconstitutional. *See*

*United States v. Venneri*, 782 F. Supp. 1091, 1092 (D. Md. 1991); *Nelson v. Colorado*, 137 S. Ct. 1249, 1252 (2017). And property seized in reliance on a replevin statute that is later declared unconstitutional must be returned—even if the defendant took the property in good faith and before the judicial pronouncement of unconstitutionality. *See Wyatt v. Cole*, 994 F.2d 1113, 1115 (5th Cir. 1993). The same principle applies under the common law: A person who takes another's property in "good faith" and without fault must nevertheless return that property or pay its replacement value in an action for conversion, as conversion is a strict-liability tort and is unconcerned with questions of fault or the defendant's state of mind. *See* Richard A. Epstein, *Torts* § 1.12.1 at 32 (1999).

In all of these cases, a defendant's good faith will provide a defense if a victim sues over collateral harms inflicted by the unconstitutional interference with his property. The tax collectors in *Windsor* and *Harper*, for example, will have qualified immunity if a taxpayer sues to recover damages for emotional distress or economic losses caused by the unconstitutional tax. Prosecutors and jailers will have immunity if a convict sues for reputational harm or wrongful imprisonment caused by their enforcement of a criminal statute that is later declared unconstitutional. And a person who seizes another's property under an unconstitutional replevin statute will have a "good faith" defense if the victim seeks to recover damages beyond the mere return of his property. *See Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993). But the wrongfully taken property *still* must be returned—even when the de-

fendant has a qualified-immunity or a good-faith defense against claims for damages that arise from the unconstitutional seizure of property. No one gets to keep money or property that is taken in good faith but in violation of another's constitutional rights.

## ARGUMENT

Under the text of 42 U.S.C. § 1983, Ms. Lee is entitled to a refund of her fair-share fees.[3] The union "deprived" Ms. Lee of her constitutional rights because the Supreme Court's ruling in *Janus* is retroactive.[4] The union acted "under color of" state law because it took these fair-share fees under the authority of a state statute and in cooperation with a public employer.[5] And the union cannot assert a qualified-immunity defense because the union is a private entity rather than a state officer. *See Wyatt v. Cole*, 504 U.S. 158, 167

---

3. 42 U.S.C. § 1983 provides:

   > Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress
   > . . . .

4. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96 (1993) ("[A] rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law.").

5. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) ("To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." (citation and internal quotation marks omitted)).

(1992) ("[Q]ualified immunity for public officials [is] not applicable to private parties.").

The union, however, thinks it can escape Ms. Lee's refund lawsuit by invoking a "good-faith defense" that resembles qualified immunity, but that protects private defendants (and not just government officers) when they violate another's constitutional rights before the courts have clearly established the illegality of their conduct. The Supreme Court has never recognized such a defense. *See Richardson v. McKnight*, 521 U.S. 399, 413–14 (1997) ("*Wyatt* [*v. Cole*, 504 U.S. 158 (1992)] explicitly stated that it did not decide whether or not the private defendants before it might assert, not immunity, but a special 'good-faith' defense. . . . Like the Court in *Wyatt,* and the Court of Appeals in this case, we do not express a view on this last-mentioned question."); William Baude & Eugene Volokh, *Compelled Subsidies and the First Amendment*, 132 Harv. L. Rev. 171, 203 (2018) ("[T]his good faith defense has never been endorsed by the Supreme Court, and there is little clear authority for it."). But several courts of appeals—including the Sixth Circuit—have allowed private defendants to assert a good-faith defense in section 1983 litigation.[6]

---

6. *See Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*, 76 F.3d 692, 698–99 (6th Cir. 1996); *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993); *Clement v. City of Glendale*, 518 F.3d 1090, 1096–97 (9th Cir. 2008); *Pinsky v. Duncan*, 79 F.3d 306, 311–12 (2d Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275–78 (3d Cir. 1994)).

Other appellate court rulings, by contrast, have categorically rejected a "good faith" defense for private defendants who are sued under section

A "good faith" defense, however, will not protect the union in this refund lawsuit. Neither good faith nor qualified immunity allows a defendant to escape *restitution* of the property or money that it took in violation of another's constitutional rights, even when it shields a defendant from *damages* for collateral harms inflicted by its inadvertent constitutional violations. Property taken in violation of another's constitutional rights must be returned, even if it was taken in good faith.

## I. WRONGFULLY TAKEN PROPERTY MUST BE RETURNED, EVEN IF IT WAS TAKEN IN GOOD FAITH

Under what circumstances can someone innocently but wrongfully take another's property and get to keep it? "Good faith" can protect someone who takes something that turns out not to belong to them from punitive or additional damages, but the wrongfully taken property must always be returned—even if the defendant took the property in good-faith reliance on a statute or court ruling that is later declared unconstitutional.

There are three separate and independent reasons why the union's alleged good faith cannot shield it from Ms. Lee's refund lawsuit. First, the courts have repeatedly and consistently required the return of property and money that was taken in good faith but in violation of another's constitution-

---

1983. *See Howerton v. Gabica*, 708 F.2d 380, 385 n.10 (9th Cir. 1983) ("[T]here is no good faith immunity under section 1983 for private parties who act under color of state law to deprive an individual of his or her constitutional rights."); *Downs v. Sawtelle*, 574 F.2d 1, 15–16 (1st Cir. 1978); *Lovell v. One Bancorp*, 878 F.2d 10, 13 (1st Cir. 1989).

al rights—even when qualified immunity or good faith would have shielded the defendants from liability that extends beyond mere return of the innocently taken property. Ms. Lee's refund demands are indistinguishable from the cases in this long and unbroken line of authority. *See* Part I.A, *infra*. Second, the Supreme Court's opinion in *Wyatt v. Cole*, 504 U.S. 158 (1992), prevents defendants from asserting non-textual defenses such as "good faith" unless the most analogous common-law tort would have recognized a good-faith defense at the time that 42 U.S.C. § 1983 was enacted. *Id.* at 164. The common-law tort most analogous to Ms. Lee's constitutional claim is conversion, and conversion is a strict-liability tort that is unconcerned with a defendant's "good faith" or subjective state of mind. *See* Part I.B, *infra*. Third, the defenses of qualified immunity and good faith are categorically inapplicable to claims for equitable relief, and Ms. Lee is asserting an equitable claim for restitution of her "fair-share fees." *See* Part I.C, *infra*. Each of these three arguments undergirds the same overarching principle: Property that is taken in good faith—but in violation of another's constitutional rights—must be restored when the plaintiff demands its return.

### A. Property Taken In Violation Of Another's Constitutional Rights Must Be Returned, Even If The Defendant Took The Property In Good-Faith Reliance On A Statute Or Court Ruling

When a court pronounces a statute unconstitutional—or when it repudiates a previous judicial ruling that had authorized unconstitutional con-

duct—the court's decision is retroactive,[7] and money or property that was taken in reliance on the unconstitutional statute or court ruling must be restored to the rightful owner. A defendant who took another's money or property in good-faith reliance on these now-repudiated authorities may be shielded from liability for damages if a plaintiff seeks recovery for emotional distress, economic loss, or other collateral harms that arise from the defendant's innocent but unconstitutional seizure of the property. But under no circumstance is a defendant allowed to *keep* the money or property that it took in good faith but in violation of the Constitution. This principle is long established, and it has been reaffirmed in numerous cases.

1.   When a state or municipality collects a tax that is later declared unconstitutional, it must refund the unconstitutionally collected taxes to anyone who sues within the relevant statute of limitations — even if the taxing authorities relied in good faith on a statute that authorized the collection of the tax. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 98–99 (1993). A "good faith" or qualified-immunity defense can shield the tax collectors from liability for damages that were inflicted on the victims of this unconstitutional tax. But it will never allow them to *keep* the taxes that were unconstitutionally collected if a plaintiff sues for their return.

---

7. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96 (1993) ("[A] rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law.").

2.    When the Supreme Court declared the Defense of Marriage Act unconstitutional, it compelled the IRS to return the $363,053 in estate taxes that it had collected from the plaintiff in reliance on this unconstitutional statute. *See United States v. Windsor*, 570 U.S. 744, 753, 775 (2013). The Supreme Court ordered the IRS to refund these taxes even though the taxes had been collected in good-faith reliance on the Defense of Marriage Act, and even though the taxes had been collected four years *before* the Supreme Court's pronouncement of unconstitutionality. *See id.* at 753. Other same-sex couples who had paid excess taxes on account of the Defense of Marriage Act obtained similar relief in the aftermath of *Windsor*. *See* IRS Revenue Ruling 2013-17. The defenses of qualified immunity or good faith would have shielded government officials if a same-sex couple had sought damages for collateral harms that arose from these unconstitutional tax assessments, such as emotional distress or economic loss. But neither qualified immunity nor good faith will protect defendants from *restitution* of the money or property that they took in violation of the Constitution.

3.    When the government collects fines pursuant to a statute that is later declared unconstitutional, it must return those fines—even if the government collected the fines in good faith and in reliance on a statute that was believed to be constitutional at the time. *See United States v. Lewis*, 478 F.2d 835, 836 (5th Cir. 1973) (fines collected pursuant to a statute that is subsequently determined to be unconstitutional must be repaid when suit is brought to recover them); *Pasha v. United States*, 484 F.2d 630, 632–33 (7th

Cir. 1973) (same); *Neely v. United States*, 546 F.2d 1059, 1061 (3d Cir. 1976) (same); *DeCecco v. United States*, 485 F.2d 372, 372–73 (1st Cir. 1973) (same); *United States v. Summa*, 362 F. Supp. 1177, 1181 (D. Conn. 1972) (same). Even crime victims who receive restitution from a convict must return that money if the statute on which the conviction was based is later declared unconstitutional. *See United States v. Venneri*, 782 F. Supp. 1091, 1092 (D. Md. 1991) (ordering a putative crime victim to repay restitution that it had obtained nine years earlier, because the conviction had been "based upon an unconstitutional statute"); *see also Nelson v. Colorado*, 137 S. Ct. 1249, 1252 (2017) ("When a criminal conviction is invalidated by a reviewing court and no retrial will occur, . . . the State [is] obliged to refund fees, court costs, and restitution exacted from the defendant"). That the fines or restitution were imposed in "good faith" can provide a defense if the convict sues over the collateral harms imposed by his wrongful conviction. The prosecutor, for example, would have immunity if he were sued for harming the convict's reputation, and the jailer would have immunity if he were sued for wrongful imprisonment. But there is no "good faith" defense when the victim of a wrongful conviction demands a return of his money that was taken in good faith but in violation of his constitutional rights. *See United States v. Holmes*, 822 F.2d 481, 500 (5th Cir. 1987) ("[A criminal] defendant can recover a fine imposed under an unconstitutional statute."); *United States v. Lewis*, 342 F. Supp. 833, 836 (E.D. La. 1972), *aff'd*, 478 F.2d 835 (5th Cir. 1973) ("Fairness and equity compel [a return of fines collected under an unconsti-

tutional statute], *notwithstanding the fact that the government and the court were proceeding in good faith* at the time of prosecution." (emphasis added)); *Venneri*, 782 F. Supp. at 1093 ("The interests of justice make it *imperative* that the petitioner receive a refund of his restitution." (emphasis added)).

4.    When an individual seizes another person's property in good-faith reliance on a replevin statute that is later declared unconstitutional, he must return the property that he took in violation of the owner's constitutional rights—even if he acted before the courts had declared the replevin statute unconstitutional. *See Wyatt v. Cole*, 994 F.2d 1113, 1115 (5th Cir. 1993). The defendant's "good faith" reliance on the statute will protect him from paying damages for the collateral harms that resulted from his seizure of the plaintiffs' property. *See id.* at 1121. But it will not allow a defendant to keep the property that he seized in violation of the Constitution, even if the seizure was authorized by a state law that was thought to be constitutional at the time.

5.    When law-enforcement officers seize property in violation of the Constitution but in good-faith reliance on a search warrant that is later declared invalid, they cannot keep the unconstitutionally seized property if the owner sues for its return.[8] In *United States v. Rayburn House Office Building Room 2113 Washington DC 20515*, 497 F.3d 654, 656, 665 (D.C. Cir. 2007), the FBI was compelled to return documents that it seized from Congressman

---

8. Unless, of course, the seized property is contraband. See *United States v. Search of Music City Marketing, Inc.*, 212 F.3d 920, 923 (6th Cir. 2000).

William Jefferson's office in violation of the Speech and Debate clause, even though the officers had relied in good faith on a court-approved search warrant that was believed to be constitutional at the time. *See id.* at 664 ("There is no indication that the Executive did not act based on a good faith interpretation of the law, as reflected in the district court's prior approval and later defense of the special procedures set forth in the warrant affidavit."). The officers' good faith would shield them from lawsuits for damages that were caused by their unconstitutional seizure. *See, e.g.*, *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). But under no circumstance would the officers' "good faith" allow them to deprive Congressman Jefferson of the documents that they had seized in violation of his constitutional rights.

6.   If a state confiscates property in violation of the Excessive Fines clause, it must return that property even if the seizure occurred before the Supreme Court declared the Excessive Fines clause applicable to the States. *See Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) (declaring, for the first time, that "[t]he Excessive Fines Clause is . . . incorporated by the Due Process Clause of the Fourteenth Amendment."). Defenses of qualified immunity or good faith would shield individual officers from personal monetary liability if they acted in accordance with Supreme Court doctrine existing at that time. But those defenses cannot be used to prevent a plaintiff from recovering his property that was confiscated in violation of the Excessive Fines clause—even if the seizure occurred before the Supreme Court's pronouncement of incorporation.

7. If a tow-truck company tows and impounds a car in violation of the owner's constitutional rights but acts in good faith while doing so, it must return the unconstitutionally seized car to its owner—and that remains the case even if the company could assert a "good faith" defense when the owner sues for damages inflicted by the unconstitutional tow. *See Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008). Here, too, a "good faith" defense can shield a defendant from personal monetary liability when a plaintiff seeks recovery for the collateral harms that resulted from the unconstitutional seizure of her property. But it cannot allow a defendant to *keep* property that it seized in violation of the Constitution, even if the defendant acted in good faith when doing so.

Ms. Lee's refund demands are indistinguishable from each of these cases. She has sued to recover property that was taken in violation of her constitutional rights, at a time when the compelled payments were thought to be authorized by then-existing statutes or court decisions. The union must return this unconstitutionally taken property, just as other defendants must return money or property that they take in violation of the Constitution—even when they act in good-faith reliance on statutes or court decisions that purported to authorize their conduct. Neither qualified immunity nor good faith will *ever* allow a defendant to be enriched by its inadvertent constitutional violations, and they do not provide a defense when a plaintiff seeks restitution of property that was seized in violation of her rights.

The exact same principle applies under the common law: A person who takes another's property innocently and without fault remains liable to return that property or pay its replacement value in an action for conversion, even when the defendant's "good faith" precludes liability for collateral damages (such as emotional distress or economic loss) that may have resulted from the inadvertent taking. *See* Richard A. Epstein, *Torts* § 1.12.1 at 32 (1999) ("Liability for conversion is strict, for it is still maintainable when D has an honest belief that he owns the thing in question and thus is entitled to its exclusive use. 'Therefore, neither good faith nor bad faith, neither care nor negligence, neither knowledge nor ignorance are the gist of the action.'" (quoting *Moore v. Regents of the University of California*, 793 P.2d 479 (Cal. 1990))). Under no circumstance is a defendant allowed to *keep* property that it took in good faith but in violation of the plaintiff's rights.

A good-faith defense would shield the union from liability if the plaintiff were suing for damages that extend beyond the mere recovery of her property. In *Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993), for example, the defendants had seized the plaintiff's cattle and tractor in good-faith reliance on a replevin statute that was later held to be unconstitutional. *See id.* at 1115. After the statute was declared unconstitutional, the plaintiff sued for damages. The Fifth Circuit held that the defendants' "good faith" shielded them from liability for damages that were inflicted by the seizure, but the defendants *still had to return* the cattle and the tractor that they had unconstitutionally taken. *See id.* at 1115 (noting that the state courts had "ordered" the defend-

ants to "return the property" that they had seized). In *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008), a towing company had towed the plaintiff's car in good faith but in violation of her constitutional rights. The "good faith" defense shielded the towing company from liability for damages inflicted by the towing, but it did *not* allow the towing company to keep the plaintiff's car. *See id.* at 1096–97. "Good faith" is *never* a defense to claims for restitution or restoration of unconstitutionally seized property — even though it provides a defense when someone sues over collateral damage inflicted by the seizure.

Indeed, in each of the five circuit-court rulings that has recognized a "good faith" defense, the court's holding protected the defendants only from liability for *damages* that arose from their unconstitutional interference with another's property — and in each of these cases it would have been absurd to allow the defendants to *keep* the property interests that they took in good faith but in violation of the plaintiff's constitutional rights. *Pinsky v. Duncan*, 79 F.3d 306 (2d Cir. 1996), for example, shielded a defendant from liability for damages inflicted by his good-faith (but unconstitutional) attachment of the plaintiff's real estate. The court did not, however, allow the defendant to retain the unconstitutional attachment that he had imposed on the plaintiff's property. *See id.* at 311–13. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994), protected a defendant from liability for damages inflicted by its good-faith (but unconstitutional) garnishment of the plaintiff's checking account, but the defendant *still* had to relinquish the un-

constitutional garnishment that it had obtained. *See id.* at 1258 (noting that the state courts had "vacated the attachment of [the plaintiff's] checking account"). And *Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*, 76 F.3d 692 (6th Cir. 1996), allowed a defendant to escape damages for its good-faith (but unlawful) impoundment of the plaintiff's property, but it did not permit the defendant to *keep* the property that it had unlawfully impounded. *See id.* at 696 (noting that the defendant had "held the seized material in trust for eight days" until the district court took custody of the materials, which the courts were required to return to the plaintiff after the impoundment order had been vacated).

Does the union believe that the defendants in *Wyatt* should have been allowed to keep the cattle and tractor that they had seized in good-faith reliance on the state replevin statute that was later declared unconstitutional? *See Wyatt*, 994 F.2d at 1115. That the tow-truck company in *Clement* should have been allowed to keep the car that it towed in good-faith reliance on a police officer's instructions? *See Clement*, 518 F.3d at 1096–97. That the IRS should have been allowed to keep the taxes it collected from same-sex couples before the Defense of Marriage Act was declared unconstitutional? *See Windsor*, 570 U.S. at 753, 775. That government officials should be allowed to keep taxes, fines, and forfeited property that they collect in good-faith reliance on statutes that are later declared unconstitutional? *See Harper*, 509 U.S. at 98–99; *Lewis*, 478 F.2d at 836; *Pasha*, 484 F.2d at 632–33; *Neely*, 546 F.2d at 1061; *DeCecco*, 485 F.2d at 372–73; *Holmes*, 822 F.2d at 500; *Summa*,

362 F. Supp. at 1181. That the FBI should have been allowed to keep the property that it seized from Congressman Jefferson's office in good-faith reliance on a search warrant that was later declared unconstitutional? *See Rayburn House Office Building Room 2113 Washington DC 20515*, 497 F.3d at 656, 665. That putative crime victims should be allowed to keep victim-restitution awards that they receive in good faith but in reliance on a statute that is later held unconstitutional? *See Venneri*, 782 F. Supp. at 1093. Every one of these cases must be decided differently if a defendant's "good faith" allows it to *keep* property that it took without fault but in violation of another's constitutional rights.

Courts that have allowed unions to invoke a "good faith" defense in agency-fee refund lawsuits make no effort to explain how their stance can be reconciled with the rulings that compel the return of property taken in good-faith reliance on statutes that are later declared unconstitutional. *Jarvis v. Cuomo*, 660 Fed. App'x 72 (2d Cir. 2016), for example, simply stated that "it was objectively reasonable for [the union] to act on the basis of a statute not yet held invalid," and concluded that "defendants are not liable for damages stemming from the pre-*Harris* collection of fair share fees." *Id.* at 76 (citation and internal quotation marks omitted). That is a non-sequitur. To begin, an immunity from "damages" is not an immunity from restitution. *See Gilpin v. American Federation of State County and Municipal Employees AFL-CIO*, 875 F.2d 1310, 1314 (7th Cir. 1989), ("[R]estitution . . . is ordinarily (although not invariably) a substitute for rather than a form of damages.");

*Wileman Bros. & Elliott v. Espy*, 58 F.3d 1367, 1385 (9th Cir. 1995), *rev'd on other grounds*, *Glickman v. Wileman Bros. & Elliott*, 521 U.S. 457 (1997) ("[R]efund claims are not barred by sovereign immunity because they are an equitable action for the return of improper assessments."). More importantly, *Jarvis* did not cite and made no effort to distinguish *Windsor*, *Harper*, *Lewis*, *Pasha*, *Neely*, *DeCecco*, *Holmes*, *Summa*, or *Venneri*—all of which required the return of money *despite* the fact that it had been taken in "objectively reasonable" reliance on a statute "not yet held invalid." And *Jarvis* did not address or acknowledge the staggering implications of its holding—which would have allowed the defendant in *Wyatt* to *keep* the cattle and the tractor that it had seized in good-faith reliance on an unconstitutional replevin statute.[9]

\* \* \*

---

9. The other post-*Harris* cases deploy similar conclusory assertions, and they ignore the cases that require defendants who take money or property in good faith—but in violation of another's constitutional rights—to return that money or property when the plaintiff sues for its return. *See Winner v. Rauner*, No. 15-CV-7213, 2016 WL 7374258, *5 (N.D. Ill. Dec. 20, 2016) ("[T]he Supreme Court had never invalidated a statute authorizing [agency fees] before *Harris*. . . . SEIU's reliance on relevant precedent was reasonable. . . . Therefore, the pleadings are a sufficient basis to conclude that the affirmative good-faith defense applies to SEIU as a matter of law."); *Hoffman v. Inslee*, No. 14-CV-200 (MJP), 2016 WL 6126016, *4 (W.D. Wash. Oct. 20, 2016) ("[A] private party sued under § 1983 is not liable for money damages if that party was acting in good faith reliance on a facially valid state law.").

A defendant's good faith will never allow it to keep the money or property that it has taken in violation of another's constitutional rights. Good faith can shield a defendant if a plaintiff sues for damages that extend beyond the mere return of his property. But it will never allow a defendant to enrich itself by *keeping* the property that it took in reliance on an unconstitutional statute. This principle is universal in the law—and it is reflected not only in the cases that we have cited but also in the common law, where liability for conversion is strict and a defendant's "good faith" will never excuse his obligation to return property (or the fair market value of property) that he took innocently but in violation of the plaintiff's rights. *See Morissette v. United States*, 342 U.S. 246, 253–54 (1952) ("In the civil tort [of conversion], except for recovery of exemplary damages, the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant."); Epstein, *supra* at 32. A defendant is never permitted to keep money or property that it took in good faith but in violation of another's constitutional rights, even when the defendant's good faith would confer an immunity from damages over the collateral harms inflicted by its innocent but unconstitutional seizure of another's property.

**B.** ***Wyatt v. Cole* Precludes Courts From Recognizing A "Good Faith" Defense Under 42 U.S.C. § 1983 When The Most Analogous Common-Law Tort Rejects Any Consideration Of The Tortfeasor's State Of Mind**

All of this dovetails perfectly with the Supreme Court's discussion of immunity defenses in *Wyatt v. Cole*, 504 U.S. 158 (1992). Although *Wyatt*

refused to resolve whether a "good faith" defense exists for private defendants, it established clear limits on the judiciary's authority to create or recognize non-textual defenses to 42 U.S.C. § 1983. Whenever a section 1983 defendant asserts a non-textual defense such as immunity or "good faith," *Wyatt* compels courts to look to the most analogous common-law tort—and it allows courts to recognize the proposed defense only if that most analogous tort would have conferred similar defenses at the time section 1983 was enacted:

> Section 1983 creates a species of tort liability that on its face admits of no immunities. Nonetheless, we have accorded certain government officials either absolute or qualified immunity from suit if the tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine. If parties seeking immunity were shielded from tort liability when Congress enacted the Civil Rights Act of 1871—§ 1 of which is codified at 42 U.S.C. § 1983—we infer from legislative silence that Congress did not intend to abrogate such immunities when it imposed liability for actions taken under color of state law. . . . In determining whether there was an immunity at common law that Congress intended to incorporate in the Civil Rights Act, we look to the most closely analogous torts.

*Wyatt*, 504 U.S. at 164 (citations and internal quotation marks omitted); *see also id.* at 170 (Kennedy, J., concurring) ("Our immunity doctrine is rooted in historical analogy, based on the existence of common-law rules in 1871, rather than in freewheeling policy choices." (citation and internal quotation marks omitted)); *id.* at 171–72 (Kennedy, J., concurring) ("[W]e may not

transform what existed at common law based on our notions of policy or efficiency.").

The common-law tort most analogous to the union's unconstitutional confiscation of wages is conversion—and conversion is a strict-liability tort that is unconcerned with whether the defendant acted in good faith. *See Morissette v. United States*, 342 U.S. 246, 253–54 (1952) ("In the civil tort [of conversion], except for recovery of exemplary damages, the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant."); *Dice v. White Family Cos.,* 878 N.E.2d 1105, 1111 (Ohio App. 2007) ("To state a claim for conversion, the plaintiff need not demonstrate that the defendant acted in bad faith. '[N]either motive nor mistake is a defense to a claim of conversion.'" (citation omitted)). Because a defendant's good faith is no defense in an action for conversion, it is no defense when a plaintiff sues under 42 U.S.C. § 1983 for the return of property that was taken in violation of his constitutional rights. *See Wyatt*, 504 U.S. at 164. And that is consistent with the long line of cases that compel the return of property taken in good faith but in violation of another's rights. *See* Part I.A, *supra*, at 14–26.

### C. Neither Qualified Immunity Nor Good Faith Provides A Defense Against Equitable Claims

There is yet another fatal problem with the union's "good faith" defense: The defenses of qualified immunity and "good faith" can protect a defendant only from liability for damages. These defenses are categorically in-

applicable to claims for equitable relief of any sort—including equitable monetary relief such as backpay, refunds, or restitution. *See Wood v. Strickland,* 420 U.S. 308, 315 n.6 (1975), *overruled in part on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ("[I]mmunity from damages does not ordinarily bar equitable relief as well."); *Brown v. Bathke,* 566 F.2d 588, 593 (8th Cir. 1977) ("The monetary award represents an equitable restitution of salary unlawfully withheld. . . . We therefore need not decide whether the Board members acted in good faith, since the qualified immunity enunciated in *Wood v. Strickland*, 420 U.S. 308 (1975), applies only to damages, not to equitable relief."); *Wileman Bros. & Elliott v. Espy*, 58 F.3d 1367, 1385 (9th Cir. 1995), *rev'd on other grounds, Glickman v. Wileman Bros. & Elliott,* 521 U.S. 457 (1997) ("[R]efund claims are not barred by sovereign immunity because they are an equitable action for the return of improper assessments.").[10] This distinction between claims for damages—which can be subject to qualified-immunity or "good faith" defenses—and equitable claims for restitution of property (which are *not* subject to these defenses) tracks the foundational principle that property taken in violation of another's constitu-

---

10. *See also Miller v. Board of Education of Lincoln County,* 450 F. Supp. 106, 115 (S.D. W. Va. 1978) ("Likewise, the Defendants are not protected by their protestations that their actions were taken in good faith. First of all, the Court finds that the terminations of the prevailing Plaintiffs could in no way be characterized as being in good faith. Even if they were, however, while the good faith defense may preclude a damage award, it is not a defense to the exaction of back pay incident to equitable relief. Wood v. Strickland, 420 U.S. 308 (1975); mia, 560 F.2d 925, 940 (8th Cir. 1977).").

tional rights must always be returned, even when the defendant has taken the property in good faith and in reliance on a statute that it reasonably believed to be constitutional. *See* Part I.A, *supra*, at pp. 14–26.[11]

Ms. Lee is seeking restitution of money that the union took in violation of her constitutional rights. That is a claim for equitable relief rather than a demand for money damages. *See Tull v. United States*, 481 U.S. 412, 424 (1987) ("[D]isgorgement of improper profits [is] traditionally considered an equitable remedy."); *Chauffeurs, Teamsters & Helpers, Local 391 v. Terry*, 494 U.S. 558, 570 (1990) ("[W]e have characterized [money] damages as equitable where they are restitutionary."); *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946) ("Restitution, which lies within that equitable jurisdiction, is consistent with and differs greatly from the damages and penalties which may be awarded"); *Wileman Bros.*, 58 F.3d at 1385 ("[T]he handlers seek the return of the precise property that was wrongfully taken from them — the assessments levied in violation of their First Amendment rights. . . . The fact

---

11. *See also Bowen v. Massachusetts*, 487 U.S. 879, 893–94 (1988) ("Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for 'the recovery of specific property *or monies,* ejectment from land, or injunction either directing or restraining the defendant officer's actions.' (quoting *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688 (1949) (emphasis added by *Bowen*)); 3 Dobbs, Law of Remedies § 12.1(1), at 9 (2d ed. 1993) ("Restitutionary recoveries are based on the defendant's gain, not on the plaintiff's loss.").

that the property taken from the handlers was money does not alter its character as a specific remedy in this case." (citing *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988)).[12] And because Ms. Lee has brought an equitable claim for relief, the defenses of qualified immunity or good faith are categorically inapplicable.

The district court did not consider or address this argument. *See* Memorandum of Opinion and Order, R. 56, Page ID # 724–27. The union, however, argued that Ms. Lee's claims should not be considered "equitable" because her complaint "contains no allegation that the fair share fees she paid have been maintained in a specific fund against which a constructive lien could be enforced." Reply Mem. of Union Defs.' in Support of Mot. to Dismiss, R. 42, Page ID # 465. But a complaint is not required to plead that level of factual detail under a regime of notice pleading. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations" (citation and internal quotation marks omitted)); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" (quoting

---

12. *See also Sterling v. United States*, 749 F. Supp. 1202, 1207 (E.D.N.Y. 1990) ("The complaint in this case seeks monetary damages, but in the exact amount seized from plaintiff and accordingly can be construed as requesting a specific equitable remedy; namely, the return of the moneys taken . . . . Consequently, the government's contention that the relief sought by plaintiff defeats jurisdiction under the APA is without merit.").

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). And even if such details were required, a pleading deficiency of that sort is not grounds for dismissal with prejudice; a defendant should instead move for a more definite statement or seek dismissal with leave to amend. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding."). At the motion-to-dismiss stage, a court is not permitted to assume that Ms. Lee will be unable to prove the facts needed to establish an equitable claim for restitution, and it cannot make this assumption when the parties have been afforded no opportunity for discovery. Instead, a court must ask only whether it is plausible to imagine an equitable ground for recovery based on the facts that Ms. Lee has alleged. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level").

It is more than plausible to think that Ms. Lee will be able to establish an equitable claim for restitution. Whenever a plaintiff's money has been taken and mingled with a defendant's assets or accounts, the plaintiff may pursue an equitable lien against those co-mingled assets. *See United States v. Lane Labs-USA Inc.*, 427 F.3d 219, 231 (3d Cir. 2005) (holding that a restitutionary remedy that compelled a company to return money that consumers paid for products that violated the Food, Drug, and Cosmetic Act was properly characterized as "equitable," even though the specific funds had not been

cordoned off or held in segregated accounts); Restatement (First) of Restitution § 215, cmt. a ("[T]he mere fact that the property or its proceeds has been mingled with the wrongdoer's own property in one indistinguishable mass does not prevent the claimant from following his property and obtaining in part at least priority over the wrongdoer's general creditors."); *id.* cmt. c ("Where a bank in violation of its duty mingles the money of another with its own cash, and later fails, the owner of the money can follow it into the cash of the bank with which it was mingled, and if the mingled cash remains on hand he can obtain priority over other creditors of the bank who are not in the same position as he. . . . The equitable lien of the claimant was not destroyed by the mingling, but attached to the whole of the mingled fund; but to the extent to which the mingled fund is dissipated he loses his equitable lien, which is confined to the part of the mingled fund which remains.").

And this restitutionary relief will be deemed "equitable" so long as the plaintiff can identify an account or fund against which to impose the equitable lien, and so long as sufficient money remains in the account or fund to satisfy the plaintiff's claims. *See Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 362 (2006) ("[O]ne feature of equitable restitution was that it sought to impose a constructive trust or equitable lien on 'particular funds or property in the defendant's possession.'" (quoting *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 213 (2002))); *Central States, Southeast and Southwest Areas Health and Welfare Fund by Bunte v. American International Group, Inc.*, 840 F.3d 448, 453 (7th Cir. 2016) ("The remedy is proper-

ly regarded as equitable *only* if the plaintiff seeks the return of 'specifically identified funds that remain in the defendant's possession or . . . traceable items that the defendant purchased with the funds (*e.g.*, identifiable property like a car).'" (citation omitted)). There is still money that remains in the union's treasury, and the union has not "dissipated" that co-mingled money to the point that it is unable to repay Ms. Lee from those funds. These "specifically identified funds"—even though they have been co-mingled—remain in the union's possession, and Ms. Lee is entitled to seek an equitable lien against them. *See Montanile v. Board of Trustees of the National Elevator Industrial Health Benefit Plan*, 136 S. Ct. 651, 658, 659 (2016) (recognizing that an "equitable lien" may be enforced "against specifically identified funds that remain in the defendant's possession" but not if the defendant "dissipated the entire fund on nontraceable items").

All of this is consistent with the repeated judicial holdings that compel the return of money or property taken in violation of another's constitutional rights—*even when* the defendant can assert a good-faith (or qualified immunity) defense against claims for compensatory damages arising from the unconstitutional taking of the property. *See* Part I.A, *supra* at pp. 14–26. The relevant doctrines operate in lockstep: Whether one applies the most-analogous tort rule from *Wyatt*, the distinction between legal and equitable relief, or the abundant judicial authority that compels the return of property taken in reliance on an unconstitutional statute, they all lead to the same result: Money or property that has been taken in good faith—but in violation of another's

constitutional rights—must be returned, and good faith is no defense in a lawsuit seeking restitution of property that was taken in violation of the Constitution.

## II. THE UNION'S APPEAL TO PRINCIPLES OF EQUALITY AND FAIRNESS DOES NOT ALLOW IT TO KEEP THE MONEY THAT IT TOOK FROM MS. LEE IN VIOLATION OF HER CONSTITUTIONAL RIGHTS

In the district court, the union's argument for a good-faith defense relied on an appeal to principles of equality and fairness. *See* Mem. of Union Defs. in Support of Mot. to Dismiss, R. 37-1, Page ID # 367–68. And the court rulings that the district court cited have repeatedly invoked the notion that it would be unfair and inequitable to compel the union to repay money that it had collected in reliance on pre-*Janus* statutes and court rulings. *See, e.g.*, *Danielson v. AFSCME Council 28, AFL-CIO*, 340 F. Supp. 3d 1083, 1085 (W.D. Wash. 2018) ("Although the precise contours of the defense have not been clearly defined by the Supreme Court, circuit courts, including the Ninth Circuit, have acknowledged its general contours of equity and fairness."). But there is no basis in either "equality" or "fairness" for shielding the union from Ms. Lee's refund lawsuit.

### A. There Is Nothing Unfair Or Inequitable About Requiring The Union To Return The Money That It Took From Ms. Lee In Violation Of Her Constitutional Rights

The union argues that it would be unfair to hold private defendants liable under 42 U.S.C. § 1983 for acting in accordance with statutes or judicial rulings that are only later declared unconstitutional. *See* Mem. of Union Defs.

in Support of Mot. to Dismiss, R. 37-1, Page ID # 368 (describing "'the unfairness of imposing damages liability on private defendants whose honest and reasonable belief in the constitutionality of their conduct turns out later to have been mistaken.'" (quoting Sheldon Nahmod, *The Emerging Section 1983 Private Party Defense*, 26 Cardozo L. Rev. 81, 91 (2004)). But a defendant is never allowed to *keep* property or money that it took in good faith but in violation of another's rights when the plaintiff sues for its return—even when the property was taken in reliance on a statute or court ruling that was believed to be constitutional at the time. *See* Part I.A, *supra* at pp. 14–20 (citing and describing cases). It may very well be unfair to require the union to pay compensatory or punitive *damages* when its conduct had been authorized by pre-*Janus* statutes and court rulings. But there is nothing unfair about a restitutionary remedy that simply requires the union to restore the money that it never should have been allowed to take in the first place—especially when allowing the union to *keep* that money would confer a windfall on the union for its violations of Ms. Lee's constitutional rights. *See Janus*, 138 S. Ct. at 2486 (describing "the considerable windfall that unions have received under *Abood* for the past 41 years."). To deny this is to deny the retroactivity of *Janus*.

More importantly, it cannot be "unfair" or "inequitable" to require the union to repay this money when the courts require other defendants to return the money or property that they take in good faith but in violation of another's constitutional rights. *See* Part I.A, *supra* at pp. 14–20. If the union's

"good faith" defense is accepted, then public-sector unions will appear be the *only* entities in the United States that are allowed to keep the property that they take in reliance on statutes or court decisions that are later pronounced unconstitutional. There is nothing fair or equitable about that regime.

### B. The Union Is Proposing A "Good Faith" Defense That Extends Far Beyond The Qualified Immunity Available To Government Officers

The union also argues that it would be unfair and inequitable to withhold a "good faith" defense because the government officers who participated in the constitutional violation would be able to assert qualified immunity. *See* Mem. of Union Defs. in Support of Mot. to Dismiss, R. 37-1, Page ID # 367–68 ("'[I]t would be manifestly unfair to hold that the state actor—whose participation is required for there to be a section 1983 violation at all—is entitled to qualified immunity, but hold the private actor . . . liable for the plaintiff's damages.'" (quoting *Franklin v. Fox*, 2001 WL 114438, at *5 (N.D. Cal. Jan. 22, 2001))). There are many problems with this argument.

The first problem is that the defense of qualified immunity extends only to *individual* government officers, while governmental *entities* such as counties and municipal corporations are categorically ineligible for that defense. That is because qualified immunity is concerned with protecting individual defendants from the threat of personal monetary liability for carrying out their duties as officers—a concern that is not present when liability is im-

posed on entities such as municipal corporations. As the Supreme Court explained when it refused to extend qualified immunity to municipalities:

> At the heart of this justification for a qualified immunity for the individual official is the concern that the threat of *personal* monetary liability will introduce an unwarranted and unconscionable consideration into the decisionmaking process, thus paralyzing the governing official's decisiveness and distorting his judgment on matters of public policy. The inhibiting effect is significantly reduced, if not eliminated, however, when the threat of personal liability is removed.

*Owen v. City of Independence,* 445 U.S. 622, 655–56 (1980). If the union believes that the principles of equality and fairness require private defendants to enjoy the same immunities available to governmental defendants, then the "good faith" defense can shield only the union's *individual* officers and employees; the union itself must remain liable on the same terms as a county or municipal corporation. *See Owen*, 445 U.S. at 655–56. The union, however, is insisting on a "good faith" defense that shields *entities* as well as *individuals*, which extends well beyond the qualified immunity available to government actors who violate section 1983. The "principles of equality and fairness" do not support a "good faith" defense for the union that is *broader* than the qualified immunity available to its government counterparts.

The second problem with the union's argument is that section 1983 often confers different types of immunities upon similarly situated defendants. Municipal corporations, for example, are forbidden to assert qualified immunity under section 1983, but they can escape liability if the plaintiff is un-

able to identify a municipal "policy" that caused the constitutional injury. *Compare Owen v. City of Independence,* 445 U.S. 622 (1980), *with Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Municipal employees, on the other hand, may assert qualified immunity but have no defense under *Monell*'s municipal-policy doctrine. This regime often produces cases in which a municipality faces liability under section 1983 but not its employee, and vice versa. *See* Mark R. Brown, *Correlating Municipal Liability and Official Immunity Under Section 1983*, 1989 U. Ill. L. Rev. 625, 631 ("Usually, where the official is not immune (and thus is potentially liable), the city will not be held accountable. Conversely, the city will be financially responsible where the official is immune (and not liable)."). Yet no court has ever held that the principles of "fairness" demand that municipalities be allowed to assert qualified immunity, or that municipal employees be allowed to assert an absence-of-municipal-policy defense. The union provides no reason why fairness should command immunities of equal or similar scope for public-sector unions and state officials, but not for municipalities and their employees.

The final problem is that there is good reason to treat the union differently from the government officials who authorized and enforced the unconstitutional agency shops: The union—unlike the government officials—is the only entity that took *and kept* the plaintiffs' money. There is nothing unfair or inequitable about requiring the union to return the agency fees that it collected while simultaneously allowing the state officers to claim qualified immunity. Indeed, it is entirely sensible (and fair) to require the entity that *re-*

*ceived* these unconstitutional payments to return the money, while conferring immunity on the state officials who merely authorized and enforced the unconstitutional agency shops. This conforms entirely with the rule that allows defendants to assert qualified immunity when they are sued for damages, but not when they are sued for restitution of property that they took in violation of the Constitution. *See* Part I, *supra* at 13–34.

* * *

The union's appeal to "fairness" and "equality" can *at most* support a "good faith" defense that resembles the qualified immunity available to government actors. But a "good faith" defense of that sort will not shield the union in this lawsuit because: (1) The union is an entity rather than an individual, and entities can never claim qualified immunity; and (2) The plaintiffs are seeking restitution of property taken in violation of the Constitution, which is not subject to a qualified-immunity defense. So the union is asserting a "good faith" defense that extends well beyond the qualified immunity available to government officers—and its appeal to "equality" and "fairness" cannot support a defense that is more expansive than the defenses available to state actors.

## III. Even If The Union Could Assert A "Good Faith" Defense, It Must Show That Its Agency Shops Complied With *Abood* And Pre-*Janus* Law

Even if one assumes that the union could assert a "good faith" defense to Ms. Lee's refund claim, the union cannot *establish* this defense unless it

shows that it fully complied with the pre-*Janus* constitutional strictures on agency shops. *See Abood v. Detroit Board of Education*, 431 U.S. 209, 239–40 (1977). The union appears to believe that *Abood* gave it carte blanche to use the fair-share fees that it took from Ms. Lee and her fellow employees, but *Abood* imposed significant limits on the use of funds that public-sector unions forcibly extract from non-members. Under *Abood*, public-employee unions could use fair-share fees to pay only for union activities that were non-ideological, and they were strictly forbidden to require an employee to "contribute to the support of an ideological cause he may oppose as a condition of holding a job." *Abood*, 431 U.S. at 235. So the union must show that it complied with *Abood* and pre-*Janus* case law by ensuring that the money it took from Ms. Lee and her fellow fair-share fee payers was never used for an "ideological cause"—and the union must make this showing before it can establish that it acted in "good faith" compliance with the law existing at that time. The union cannot ask a court to assume compliance with *Abood* without presenting any evidence of this.

The district court held that the union need not prove that it complied with *Abood*—and it refused to even allow Ms. Lee to take discovery on this issue. The district court wrote:

> [I]t is unclear what facts Lee believes need to be proven to establish compliance with *Abood* and its progeny. It appears that Lee is suggesting that if NEA was routinely violating *Abood* and its progeny, such a finding would undermine any good faith defense. However, even in the now-amended complaint, Lee has not even hinted at any such violation. Moreover, given the cur-

rent litigation, it is difficult to conceive of a circumstance where the NEA would have disregarded *Abood* in such a blatant manner as to destroy a good faith defense and yet still avoided litigation. As such, the Court declines to open discovery into the matter. The facts are undisputed that NEA collected fees under the binding precedent of *Abood* and the subsequent state statutes it spawned.

Memorandum of Opinion and Order, R. 56, Page ID # 727. The district court erred by requiring Ms. Lee to plead facts that describe violations of *Abood*; a complaint is not required to contain factual allegations that rebut affirmative defenses such as good faith. *See Gomez v. Toledo*, 446 U.S. 635, 641 (1980). The union must demonstrate compliance with *Abood* to establish its good-faith defense; Ms. Lee is not asserting non-compliance with *Abood* as an independent claim for relief. So the burden of pleading and proving compliance with *Abood* rests entirely with the union, and it is the union's responsibility to show that it used the "fair-share fees" that it collected in a manner consistent with *Abood*. And even if the district court were right to think that the burden of pleading or proof rests with Ms. Lee, it was still error to dismiss without allowing leave to amend and without permitting discovery on this issue. Whether the union complied with *Abood* is a factual question that cannot be resolved until the defendants produce evidence and the litigants have had an opportunity to take discovery.

## IV. Even If The Union Could Somehow Establish A Good-Faith Defense To Liability Under 42 U.S.C. § 1983, Ms. Lee Remains Entitled To A Refund Under The State Tort Of Conversion, Which Has No Good-Faith Defense

Even if the union can manage to escape liability under section 1983 by invoking a "good-faith defense," the union would remain liable to Ms. Lee under state-law tort of conversion, which has no good-faith defense. *See Dice v. White Family Cos.,* 878 N.E.2d 1105, 1111 (Ohio App. 2007) ("To state a claim for conversion, the plaintiff need not demonstrate that the defendant acted in bad faith. '[N]either motive nor mistake is a defense to a claim of conversion.'" (citation omitted)). The union cannot defend its tortious behavior by relying on the state statutes that authorized public-sector agency shops, because those statutes are unconstitutional and an unconstitutional statute cannot provide a defense to a state-law tort claim. *See Norton v. Shelby County*, 118 U.S. 425, 442 (1886) ("[A]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."); *Chicago, Indianapolis, & Louisville Ry. Co. v. Hackett*, 228 U.S. 559, 566 (1913) ("[A]n unconstitutional act is not a law, and can neither confer a right or immunity nor operate to supersede any existing valid law.").

The district court did not discuss the plaintiff's reliance on state tort law, but that does not allow this Court to ignore it. The plaintiff's brief opposing dismissal specifically invoked state tort law as an alternative ground for the

recovery of agency fees. *See* Pl.'s Br. in Opp. to the Union Defs.' Motion to Dismiss, R. 41, Page ID # 443–44. The plaintiff's original and amended complaint also specifically asserted causes of action under state tort law. *See* Complaint, R. 1, Page ID # 7 ("Ms. Lee is also suing the OEA, its affiliates, the NEA, and the school districts under the state-law torts of conversion, trespass to chattels, trover, replevin, detinue, unjust enrichment, restitution, and any other state-law cause of action that offers relief for this unlawful seizure of her personal property. Mr. Lee invokes the supplemental jurisdiction of this court over these pendent state-law claims. *See* 28 U.S.C. § 1367."); First Amended Complaint, R. 48-2, Page ID # 515 (same). Ms. Lee briefed and fully preserved her state-law refund claim, and the district court erred by refusing to address it.

## V. The Courts That Have Rejected Post-*Janus* Refund Lawsuits Have Not Refuted Ms. Lee's Arguments

The district court is not the only court to have rejected a post-*Janus* refund lawsuit; at least ten other district courts have accepted the union's "good faith" defense and dismissed lawsuits brought to recover agency fees in the wake of *Janus*.[13] But none of these opinions have persuasively ex-

---

13. *See, e.g.*, *Cook v. Brown*, 364 F. Supp. 3d 1184 (D. Oregon 2019); *Carey v. Inslee*, 364 F. Supp. 3d 1220 (W.D. Wash. 2019); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996 (D. Alaska 2019); *Danielson v. Inslee*, 340 F. Supp. 3d 1083 (W.D. Wash. 2018); *Mooney v. Illinois Education Ass'n*, 372 F. Supp. 3d 690 (C.D. Ill. 2019); *Akers v. Maryland State Education Ass'n*, 2019 WL 1745980 (D. Md.); *Hough v. SEIU Local 521*, 2019 WL 1274528 (N.D. Cal.); *Bermudez v. Service Employees Int'l Union, Local 521*, 2019 WL

plained why an entity that takes another's property in good faith but in violation of the Constitution should *keep* the property when a plaintiff sues for its return. Nor have they explained how the "principles of equality and fairness" can support a "good faith" defense for private entities that is more expansive than the qualified immunity available to government actors.

A "good faith" defense of the scope proposed by the union would allow the defendants in *Wyatt* to keep the cattle and tractor that they had unconstitutionally seized, and allow the towing company in *Clement* to keep the car that it had unconstitutionally towed. None of this is to deny the existence of a "good faith" defense that shields a defendant from damages for collateral harms that result from an innocent but unconstitutional seizure of another's property. But the notion that "good faith" can allow a defendant to *keep* the property that it innocently but unconstitutionally took is indefensible. No one gets a windfall for violating another person's constitutional rights, even if the violation occurred in the utmost good faith.

---

1615414 (N.D. Cal.); *Babb v. California Teachers Ass'n*, 2019 WL 2022222 (C.D. Cal.); *Janus v. Am. Fed'n of State, Cty. & Mun. Employees, Council 31, AFL-CIO*, 2019 WL 1239780 (N.D. Ill.).

# CONCLUSION

The judgment of the district court should be reversed, and the case remanded for further proceedings.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: May 29, 2019                    *Counsel for Appellant Sarah R. Lee*

# CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains  12,288 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.




                                        /s/ Jonathan F. Mitchell
                                        JONATHAN F. MITCHELL
Dated: May 29, 2019                     *Counsel for Appellant Sarah R. Lee*

## CERTIFICATE OF SERVICE

I certify that on May 29, 2019, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Sixth Circuit and served through CM/ECF upon:

John West
Leon Dayan
Jacob Karabell
Adam Bellotti
Bredhoff & Kaiser PLLC
805 15th Street N.W.
Washington, D.C. 20005
(202) 842-2600
jwest@bredhoff.com
ldayan@bredhoff.com
jkarabell@bredhoff.com
ldayan@bredhoff.com

*Counsel for Defendants-Appellees*

Timothy Joseph Gallagher
Eben O. McNair IV
Schwarzwald, McNair & Fusco
1215 Superior Avenue, Suite 225
Cleveland, Ohio 44114-3257
(216) 566-1600 (phone)
(216) 566-1814 (fax)
tgallagher@smcnlaw.com
emcnair@smcnlaw.com

Jason Walta
National Education Association
1201 16th Street N.W.
Washington, D.C. 20036
(202) 822-7035 (phone)
(202) 822-7974 (fax)
jwalta@nea.org

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Appellant Sarah R. Lee*

# ADDENDUM

# DESIGNATION OF RELEVANT LOWER-COURT DOCUMENTS

| R. | Description | Page ID # |
|---|---|---|
| 1 | Complaint | 1–11 |
| 37-1 | Memorandum of Union Defendants in Support of Motion to Dismiss | 351–76 |
| 41 | Plaintiff's Brief in Opposition to the Union Defendants' Motion to Dismiss | 443–44 |
| 42 | Reply Memorandum of Union Defendants in Support of Motion to Dismiss | 464–66 |
| 48-2 | First Amended Complaint | 515 |
| 56 | Memorandum of Opinion and Order | 724–27 |
| 57 | Judgment Entry | 728 |
| 58 | Notice of Appeal | 729 |