No. 19-3250

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———————————

SARAH R. LEE,

*Plaintiff-Appellant*,

v.

OHIO EDUCATION ASSOCIATION, AVON LAKE EDUCATION
ASSOCIATION, and NATIONAL EDUCATION ASSOCIATION,

*Defendants-Appellees*.

———————————

On Appeal from the United States District Court
for the Northern District of Ohio
Hon. John R. Adams, U.S. District Judge

———————————

**BRIEF OF DEFENDANTS-APPELLEES**

———————————

EBEN O. MCNAIR, IV
TIMOTHY GALLAGHER
Schwarzwald McNair & Fusco, LLP
1215 Superior Avenue East, Suite 225
Cleveland, OH  44114
(216) 566-1600

JASON WALTA
National Education Association
1201 16th Street N.W.
Washington, DC  20036
(202) 822-7035

JOHN M. WEST
LEON DAYAN
JACOB KARABELL
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street N.W., Suite 1000
Washington, DC  20005
(202) 842-2600

*Counsel for Defendants-Appellees*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 19-3250                Case Name: Sarah Lee v. Ohio Education Assn, et al

Name of counsel: Timothy Gallagher

Pursuant to 6th Cir. R. 26.1, National Education Association
                                              *Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> NO.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

> NO.

---

CERTIFICATE OF SERVICE

I certify that on _____ April 9 , 2019 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Timothy Gallagher
Schwarzwald McNair & Fusco, 1215
Superior Ave., Cleveland, OH 44114

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 19-3250          Case Name: Sarah Lee v. Ohio Education Assn, et al

Name of counsel: Timothy Gallagher

Pursuant to 6th Cir. R. 26.1, Ohio Education Association
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

NO.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

NO.

CERTIFICATE OF SERVICE

I certify that on _____ April  9 , 2019 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Timothy Gallagher
Schwarzwald McNair & Fusco, 1215
Superior Ave., Cleveland, OH 44114

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 19-3250                    Case Name: Sarah Lee v. Ohio Education Assn, et al

Name of counsel: Timothy Gallagher

Pursuant to 6th Cir. R. 26.1, Avon Lake Education Association
                                           *Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> NO.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

> NO.

---

CERTIFICATE OF SERVICE

I certify that on _____ April 9 , 2019 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Timothy Gallagher
Schwarzwald McNair & Fusco, 1215
Superior Ave., Cleveland, OH 44114

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

**Page**

DISCLOSURE OF CORPORATE AFFILIATIONS .................................................. i

TABLE OF AUTHORITIES ................................................................. vi

STATEMENT REGARDING ORAL ARGUMENT .......................................... xiii

STATEMENT OF JURISDICTION .......................................................................1

STATEMENT OF THE ISSUES ............................................................................1

STATEMENT OF THE CASE ...............................................................................1

SUMMARY OF ARGUMENT ..............................................................................5

ARGUMENT ........................................................................................................8

I.   PLAINTIFF'S ATTEMPT TO HOLD THE UNIONS LIABLE FOR
    PRE-*JANUS* FEES IS PRECLUDED BY THE §1983 GOOD-FAITH
    DEFENSE .................................................................................................... 8

   A.  The Courts Have Uniformly Recognized the Availability to Private
      Parties Sued Under §1983 of a Defense to Liability Based on
      Good-Faith Reliance on Existing Law .........................................................12

   B.  Plaintiff Cannot Avoid the Good-Faith Defense by Characterizing Her
      Claim as an Equitable Demand for Return of Property .............................20

     1.  Plaintiff Is Seeking Damages for Violation of Her First Amendment
        Rights, Not Equitable Restitution of Property ..........................................20

     2.  Equity Would Not Require Repayment of Plaintiff's Fair-Share Fees....25

     3.  Plaintiff's Broad Rule that "Wrongfully Taken Property Must
        Always Be Returned" Is Neither Accurate Nor Apt ................................29

   C.  Plaintiff Cannot Avoid the Good-Faith Defense with Her "Most
      Analogous Tort" Argument ........................................................................32

     1.  The Good-Faith Defense Does Not Turn on Identification of an
        Analogous Common-Law Tort Requiring Scienter ................................33

iv

2.  In Any Event, the Tort of Conversion Is Not Analogous to Plaintiff's First Amendment Claim ...........................................................37

D.  The Reasons for Denying Qualified Immunity to Municipal Entities Are Not Relevant to the Good-Faith Defense.....................................41

E.  Plaintiff Cannot Avoid the Good-Faith Defense by Raising the Unrelated Issue of Compliance with pre-*Janus* Law....................................................42

F.  Plaintiff's Argument Rests on a Superficial Understanding of the Supreme Court's Retroactivity Jurisprudence ...........................................43

II.  PLAINTIFF HAS NO CLAIM UNDER STATE TORT LAW ........................49

CONCLUSION ....................................................................................50

CERTIFICATE OF COMPLIANCE.......................................................52

CERTIFICATE OF SERVICE ...............................................................52

ADDENDUM ......................................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*6750 BMS, L.L.C. v. Drentlau,*
  62 N.E.3d 928 (Ohio Ct. App. 2016)...........................................................37, 50

*Abood v. Detroit Board of Education,*
  431 U.S. 209 (1977)...........................................................................................2

*Agostini v. Felton,*
  521 U.S. 203 (1997).........................................................................................18

*Akers v. Maryland Educ. Ass'n,*
  376 F. Supp. 3d 563 (D. Md. 2019), *appeal pending,*
  No. 19-1524 (4th Cir.) ....................................................................................11

*American Trucking Ass'ns v. Smith,*
  496 U.S. 167 (1990).........................................................................................47

*Americans United v. Prison Fellowship Ministries, Inc.,*
  509 F.3d 406 (8th Cir. 2007) ..........................................................................27

*Amgen Inc. v. Harris,*
  136 S. Ct. 758 (2016).......................................................................................25

*Anderson v. Creighton,*
  483 U.S. 635 (1987)...................................................................................13, 35

*Atlantic Coast Line R. Co. v. Florida,*
  295 U.S. 301 (1935).........................................................................................26

*Babb v. California Teachers Ass'n,*
  378 F. Supp. 3d 857 (C.D. Cal. 2019), *appeal pending,*
  No. 19-55692 (9th Cir.) ...............................................................11, 24, 37, 48

*Bermudez v. SEIU Local 521,*
  2019 WL 1615414 (N.D. Cal. Apr. 16, 2019)................................................11

*Birdsall v. Smith,*
  122 N.W. 626 (Mich. 1909).............................................................................17

*Carey v. Inslee*,
364 F. Supp. 3d 1220 (W.D. Wash. 2019), *appeal pending*,
No. 19-35290 (9th Cir.) ..........................................................10, 22, 37

*Central States Health & Welfare Fund v. First Agency, Inc.*,
756 F.3d 954 (6th Cir. 2014) ................................................20, 23, 24

*Chevron Oil Co. v. Huson*,
404 U.S. 97 (1971) ....................................................................44

*Chicot Cty. Drainage Dist. v. Baxter State Bank*,
308 U.S. 371 (1940) ...................................................................38

*Clanton v. Orleans Par. Sch. Bd.*,
649 F.2d 1084 (5th Cir. 1981) ........................................................26

*Clement v. City of Glendale*,
518 F.3d 1090 (9th Cir. 2008) .............................................15, 31, 42

*Cook v. Brown*,
364 F. Supp. 3d 1184 (D. Or. 2019), *appeal pending*,
No. 19-35191 (9th Cir.) ..............................................................10, 37

*Crockett v. NEA-Alaska*,
367 F. Supp. 3d 996 (D. Alaska 2019), *appeal pending*,
No. 19-35299 (9th Cir.) .....................................................10, 37, 43, 49

*Danielson v. AFSCME Council 28*,
340 F. Supp. 3d 1083 (W.D. Wash. 2018), *appeal pending*,
No. 18-36087 (9th Cir.) ..........................................................10, 22, 37

*Davis v. United States*,
564 U.S. 229 (2011) .................................................................46, 47

*Diamond v. Pennsylvania State Educ. Ass'n*,
2019 WL 2929875 (W.D. Pa. July 8, 2019), *appeal pending*,
No. 19-___ (3d Cir.) .....................................................................11

*Doby v. Decrescenzo*,
1996 WL 510095 (E.D. Pa. Sept. 9, 1996), *aff'd*, 171 F.3d 858
(3d Cir. 1999) ..............................................................................16

*Dodds v. Richardson*,
   614 F.3d 1185 (10th Cir. 2010) ......................................................... 35

*Doughty v. State Emp. Ass'n*,
   No. 1:19-cv-00053-PB (D.N.H. May 30, 2019), *appeal pending*,
   No. 19-1636 (1st Cir.) .......................................................................... 11

*Duncan v. Peck*,
   844 F.2d 1261 (6th Cir. 1988) ........................................................... 15

*Ellis v. Railway Clerks*,
   466 U.S. 435 (1984) .............................................................................. 31

*Felzen v. Andreas*,
   134 F.3d 873 (7th Cir. 1998) ............................................................. 45

*Franklin v. Fox*,
   2001 WL 114438 (N.D. Cal. Jan. 22, 2001) .................................... 15

*Gilpin v. AFSCME*,
   875 F.2d 1310 (7th Cir. 1989) ........................................................... 28

*Goodman v. Las Vegas Metro. Police Dep't*,
   2013 WL 819867 (D. Nev. Mar. 5, 2013) ....................................... 15

*Gould v. McFall*,
   12 A. 336 (Pa. 1888) ............................................................................ 26

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ....................................................................... 20, 23

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ....................................................................... 13, 35

*Harper v. Virginia Dep't of Taxation*,
   509 U.S. 86 (1993) .......................................................... 29, 30, 44, 45

*Harris v. Quinn*,
   134 S. Ct. 2618 (2014) ........................................................................ 11

*Hernandez v. AFSCME California*,
   2019 WL 2546195 (E.D. Cal. June 20, 2019) ........................... 11, 28

*Hoffman v. Inslee*,
   2016 WL 6126016 (W.D. Wash. Oct. 20, 2016)..................................................11

*Hough v. SEIU Local 521*,
   2019 WL 1274528 (N.D. Cal. Mar. 20, 2019), *amended*, 2019 WL
   1785414 (N.D. Cal. Apr. 16, 2019), *appeal pending*, No. 19-15792
   (9th Cir.)......................................................................................................10, 48

*Hunsberger v. Wood*,
   564 F. Supp. 2d 559 (W.D. Va. 2008), *rev'd on other grounds*, 570
   F.3d 546 (4th Cir. 2009) ....................................................................................15

*James B. Beam Distilling Co. v. Georgia*,
   501 U.S. 529 (1991)......................................................................................45, 46

*Janus v. AFSCME Council 31*,
   138 S. Ct. 2448 (2018)...............................................................................*passim*

*Janus v. AFSCME Council 31*,
   2019 WL 1239780 (N.D. Ill. Mar. 18, 2019), *appeal pending*,
   No. 19-1553 (7th Cir.) ..................................................................................10, 34

*Jarvis v. Cuomo*,
   660 F. App'x 72 (2d Cir. 2016) ...................................................................11, 15

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
   20 F.3d 1250 (3d Cir. 1994) ........................................................................15, 42

*Lemon v. Kurtzman*,
   403 U.S. 602 (1971)............................................................................................27

*Lemon v. Kurtzman*,
   411 U.S. 192 (1973)................................................................................26, 27, 28

*Lenea v. Lane*,
   882 F.2d 1171 (7th Cir. 1989) ...........................................................................26

*Lewis v. McCracken*,
   782 F. Supp. 2d 702 (S.D. Ind. 2011)................................................................16

*Los Angeles Police Protective League v. Gates*,
   995 F.2d 1469 (9th Cir. 1993) ...........................................................................26

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922 (1982)..................................................................12, 13, 39

*McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*,
496 U.S. 18 (1990).................................................................................30

*Montanile v. Board of Trustees*,
136 S. Ct. 651 (2016)............................................................................24

*Mooney v. Illinois Educ. Ass'n*,
372 F. Supp. 3d 690 (C.D. Ill. 2019), *appeal pending*,
No. 19-1774 (7th Cir.) ..............................................11, 18, 41, 43, 48

*Nemo v. City of Portland*,
910 F. Supp. 491 (D. Or. 1995) .........................................................15

*NPF IV, Inc. v. Transitional Health Servs.*,
922 F. Supp. 77 (S.D. Ohio 1996) .....................................................50

*Nunez-Reyes v. Holder*,
646 F.3d 684 (9th Cir. 2011) ..............................................................45

*Occupy Nashville v. Haslam*,
769 F.3d 434 (6th Cir. 2014) ..............................................................36

*Ogle v. Ohio Civil Serv. Emp. Ass'n*,
2019 WL 3227936 (S.D. Ohio July 17, 2019), *appeal pending*,
No. 19-3701 (6th Cir.) .............................................................11, 18, 37

*Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Const.
Corp.*, 258 F.3d 645 (7th Cir. 2001) ..................................................28

*Owen v. City of Independence*,
445 U.S. 622 (1980).............................................................................41

*Pinsky v. Duncan*,
79 F.3d 306 (2d Cir. 1996) ...........................................................15, 17

*Puckett v. Lexington-Fayette Urban Cty. Gov't*,
833 F.3d 590 (6th Cir. 2016) ................................................................8

*Reynoldsville Casket Co. v. Hyde*,
514 U.S. 749 (1995).......................................................................46, 48

x

*Richardson v. McKnight*,
    521 U.S. 399 (1997) ........................................................................13

*Robinson v. San Bernardino Police Dep't*,
    992 F. Supp. 1198 (C.D. Cal. 1998) ...............................................15

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
    490 U.S. 477 (1989) ........................................................................19

*Steele v. Industrial Dev. Bd.*,
    301 F.3d 401 (6th Cir. 2002) ..........................................................18

*Thaxton v. Ohio Education Association*,
    No. 2:11-cv-00707 (S.D. Ohio Aug. 4, 2011) .................................43

*The Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019) ..............................................23, 24, 25

*Timbs v. Indiana*,
    139 S. Ct. 682 (2019) ......................................................................32

*United States v. Rayburn House Office Bldg.*,
    497 F.3d 654 (D.C. Cir. 2007) ........................................................32

*Vector Research, Inc. v. Howard & Howard Attorneys P.C.*,
    76 F.3d 692 (6th Cir. 1996) ................................................15, 18, 42

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
    490 F. Supp. 2d 1091 (D. Nev. 2007) .............................................38

*Wholean v. CSEA SEIU Local 2001*,
    2019 WL 1873021 (D. Conn. Apr. 26, 2019), *appeal pending*,
    No. 19-1563 (2d Cir.) ......................................................................11

*Wilson v. Garcia*,
    471 U.S. 261 (1985) ........................................................................36

*Winner v. Rauner*,
    2016 WL 7374258 (N.D. Ill. Dec. 20, 2016) ..................................11

*Wood v. Strickland*,
    420 U.S. 308 (1975) ........................................................................25

*Wyatt v. Cole*,
    504 U.S. 158 (1992)................................................................*passim*

*Wyatt v. Cole*,
    994 F.2d 1113 (5th Cir. 1993) .................................................*passim*

## Statutes

28 U.S.C. §1291 ...................................................................................1

28 U.S.C. §1331 ...................................................................................1

28 U.S.C. §1343 ...................................................................................1

42 U.S.C §1983 ...........................................................................*passim*

Ohio Rev. Code ch. 4117 ......................................................................1

Ohio Rev. Code §4117.05.......................................................................1

Ohio Rev. Code §4117.09(C) .............................................................2, 17

Ohio Rev. Code §4117.11(B)(6)............................................................2

## Other Authorities

Aaron Tang & Fred O. Smith Jr., *Can Unions Be Sued for Following
    the Law?*, 132 Harv. L. Rev. F. 24 (2018)..........................................39

Joel Bishop, Commentaries on the Non-Contract Law (1889) ...............38

Restatement (First) of Torts (1939) .......................................................40

Restatement (Third) of Restitution and Unjust Enrichment (2011) ........30

## STATEMENT REGARDING ORAL ARGUMENT

The issue presented is whether public-sector unions that were authorized by Ohio law and controlling Supreme Court precedent to collect "fair-share" fees from nonmembers prior to the Supreme Court's June 2018 decision overruling its precedent and holding such fee requirements unconstitutional are liable under 42 U.S.C §1983 to repay fees they received *prior to* that decision. While to date some sixteen district courts have considered this same issue and have held unanimously that the good-faith defense under §1983 shields the defendant unions from liability for following the law as it existed at the time, this is among the first cases raising this issue to reach a court of appeals. Because of the nationwide importance of the issue, Appellees respectfully request that the Court hear oral argument.

## STATEMENT OF JURISDICTION

This litigation was brought under 42 U.S.C. §1983 alleging violation of Plaintiff's First Amendment rights; the district court had jurisdiction under 28 U.S.C. §§1331 and 1343. The court entered judgment dismissing the complaint on March 25, 2019, disposing of all claims of all parties, and Plaintiff filed a notice of appeal the same day. This Court has jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

**1.**     Whether the defendant unions can be held liable for their receipt and expenditure of "fair-share" fees deducted from Plaintiff's paychecks prior to June 27, 2018, at a time when such fair-share arrangements were expressly authorized by Ohio statute and approved by controlling Supreme Court precedent.

**2.**     Whether the district court erred in dismissing Plaintiff's state-law tort claim.

## STATEMENT OF THE CASE

**A.**     Ohio, like many other states, allows public employees to organize and bargain collectively with their public employer, through a representative organization of their choosing, over the terms and conditions of their employment. *See* Ohio Rev. Code ch. 4117. A union chosen by the majority of a bargaining unit becomes the exclusive representative of all employees in the unit, *id.*, §4117.05, subject to the duty, in collective bargaining and contract administration, to "fairly

represent all public employees in [the] bargaining unit," *id.*, §4117.11(B)(6),
whether they are dues-paying union members or not.

Recognizing that the imposition of this "duty of fair representation" with
respect to nonmembers was not cost-free, the law authorized unions and public
employers to negotiate a "fair-share" clause as part of their collective bargaining
agreement: "The agreement may contain a provision that requires as a condition of
employment … that the employees in the unit who are not members of the
employee organization pay to the employee organization a fair share fee." *Id.*,
§4117.09(C). If such a clause were agreed to, "[t]he deduction of a fair share fee
by the public employer from the payroll check of the employee and its payment to
the employee organization is automatic and does not require the written
authorization of the employee." *Id.*

This Ohio statute was enacted in 1984, several years after the Supreme
Court's decision in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977),
which had explicitly upheld the constitutionality of such fair-share requirements in
public-sector employment, as long as the nonmember was not required, over her
objection, to pay more than the portion of union dues attributable to negotiating
and enforcing the collective bargaining agreement. *See id.* at 223-37.

**B.**    Defendant-Appellee Avon Lake Education Association ("ALEA") –
which is affiliated at the state and national levels with Defendants-Appellees Ohio

Education Association ("OEA") and National Education Association ("NEA") – is the exclusive representative of teachers employed by the Avon Lake City School District ("School District"). Complaint ¶¶ 5-8, 12, RE 1, Page ID #2-3; Collective Bargaining Agreement ("CBA") art. 1, RE 1-2, Page ID #19. Consistent with Ohio law and the *Abood* precedent, the CBA between ALEA and the School District contained a fair-share provision, *id.*, art. 4(G), Page ID #27-28, in which the union "recognize[d] its obligation to fairly and equitably represent all members of the bargaining unit, whether or not they are members of the Association," and the School District agreed to "deduct the fair share fee from the paychecks of bargaining unit members who elect not to join the Association." *Id.*, art. 4(G)(2), Page ID #27.

Plaintiff Sarah Lee is a teacher employed by the School District, and thus a member of the bargaining unit represented by ALEA, who declined to become a member of the union. Complaint ¶¶ 12-13, RE 1, Page ID #3. The School District accordingly deducted fair-share fees from her paychecks and transmitted them to ALEA, as required by the statute and CBA. *Id.*, ¶ 14, Page ID #3.

**C.**    On June 27, 2018, the Supreme Court issued its decision in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018), overruling *Abood* and holding for the first time that public employees could not constitutionally be required to pay fair-share fees.

3

In light of *Janus*, both the defendant unions and the School District recognized that the statutory and contractual provisions authorizing fair-share requirements were no longer enforceable, and they immediately terminated the deduction of fair-share fees from the paychecks of nonmembers of the union, including Plaintiff Lee. *See* Declaration of Kristy Spires ¶¶ 3-9 & Exh. 1-3, RE 37-2, Page ID #377-83; Declaration of Robert Scott ¶¶ 5-9 & Exh. 1, RE 36-2, Page ID #345-47.

   **D.**    Two days before the *Janus* decision, Lee filed this lawsuit against ALEA, OEA, and NEA (collectively, the "Union Defendants"), as well as certain public officials and entities who were subsequently dismissed. Lee alleged that the requirement that she pay fair-share fees to ALEA and its affiliates violated her First Amendment rights. Complaint ¶¶ 12-14, RE 1, Page ID #3. Her complaint, brought under 42 U.S.C. §1983 as a class action, sought primarily declaratory and injunctive relief, *see* Complaint ¶ 32(a)-(j), (*l*)-(n), RE 1 Page ID #7-10, but also asked that the Union Defendants be ordered "to repay all 'agency fees' or 'fair-share fees' or other money that they unconstitutionally took from Ms. Lee and her fellow class members." *Id.*, ¶ 32(k), Page ID #10.

   The Union Defendants moved to dismiss, arguing that Plaintiff's claims for prospective relief were moot as a result of *Janus* and the ensuing cessation of fair-share collections, and that her claim that the unions were liable for retrospective

4

monetary relief as a result of having received fair-share fees in accordance with Ohio law and controlling precedent prior to the *Janus* decision was precluded by the good-faith defense under §1983.

Following full briefing, the court (Hon. John R. Adams) issued its decision on March 25, 2019, granting the Union Defendants' motion to dismiss. Memorandum of Opinion and Order, RE 56, Page ID #724-27. Citing decisions of federal district courts that had already ruled on the same issues, the court "join[ed] an ever-growing number of courts that have found that causes of action seeking to enjoin collection of fair-share fees and recoup damages based on prior collection of those fees must be dismissed." *Id.*, Page ID #724. Stating its "agree[ment] with the rationale of these decisions" and incorporating them in its ruling, the court held that "the request for injunctive relief is moot," *id.*, Page ID #725; that "individuals are entitled to rely upon binding United States Supreme Court precedent," *id.*, Page ID #727; and accordingly that the Union Defendants "may present a good faith defense," *id.*, Page ID #725, to Plaintiff's claim for repayment of pre-*Janus* fair-share fees.

## SUMMARY OF ARGUMENT

1.    The district court correctly held that the good-faith defense, which grew out of the Supreme Court's decisions allowing nongovernmental actors to be sued under 42 U.S.C. §1983 but denying them the qualified immunity that is

available to their governmental co-defendants, and which has been adopted by every court to have considered the matter, shields such private defendants from liability for acting in reliance on a presumptively valid statute – particularly where, as here, that statute was indisputably constitutional under existing Supreme Court precedent. It is not disputed that the Union Defendants relied on Ohio law and controlling Supreme Court precedent in receiving fair-share fees prior to the *Janus* decision. That reliance was reasonable and in good faith as a matter of law.

Plaintiff cannot avoid the good-faith defense by attempting to characterize her claim as seeking equitable restitution of property rather than damages at law. Her complaint seeks a remedy at law for violation of her First Amendment rights of speech and association. Nor has she identified any particular fund against which an equitable lien could be imposed, so for this reason as well any relief she might obtain would sound in law, not equity. Even if Plaintiff had an equitable claim for restitution, a court sitting in equity would be required in fashioning its remedy to take account of the same reliance interests that underlie the good-faith defense.

Plaintiff's further arguments against application of the good-faith defense are equally unfounded. That defense does not require identification of an analogous common-law tort containing an element of scienter, any more than does application of the doctrine of qualified immunity – and in any event the most closely analogous tort would be abuse of process, not conversion as Plaintiff

6

asserts. Plaintiff's further contention that the good-faith defense does not apply to non-individual entities is also misplaced; her analogy to the denial of qualified immunity to municipal entities fails to recognize that this result was based on policy considerations specific to the qualified-immunity context. And the argument that the Union Defendants cannot assert a good-faith defense without proving their compliance with pre-*Janus* fair-share requirements is a non-sequitur.

The assertion that denying Plaintiff the relief she seeks would "deny the retroactivity of *Janus*" rests on an over-simplification of the Supreme Court's retroactivity jurisprudence. Even if the *Janus* Court is deemed to have applied its newly enunciated constitutional rule to the parties before it – an assumption that is not at all evident – the issue of retroactive application is no more than a question of choice of law, which does not determine the outcome of the case and in particular does not dictate the appropriate remedy. Regardless of retroactivity considerations, the good-faith defense is an independent basis for denying the repayment remedy Plaintiff seeks.

2.    Contrary to Plaintiff's assertion, the district court did indeed consider – and properly dismiss – Plaintiff's state-law tort claims, incorporating by reference the holding of a sister court that "there can be no common law liability for conduct authorized by state statute."

## ARGUMENT

**Standard of Review.**  The district court's order granting Defendants'

motion to dismiss is reviewed *de novo*. *Puckett v. Lexington-Fayette Urban*

*Cty. Gov't*, 833 F.3d 590, 599 (6th Cir. 2016).

## I.    PLAINTIFF'S ATTEMPT TO HOLD THE UNIONS LIABLE FOR PRE-*JANUS* FEES IS PRECLUDED BY THE §1983 GOOD-FAITH DEFENSE

This lawsuit was brought two days before, and in obvious anticipation of,

the Supreme Court's decision of June 27, 2018 in *Janus v. AFSCME Council 31*,

138 S. Ct. 2448 (2018), in which the Court overruled its longstanding *Abood*

precedent that had upheld, against a First Amendment challenge, the

constitutionality of fair-share requirements in the public sector. In *Janus* the Court

decided, to the contrary, that public employees could no longer constitutionally be

required to pay such fees to help cover their union's costs of collective bargaining.

On appeal, Plaintiff does not challenge the district court's dismissal as moot

of her claims for declaratory and injunctive relief, which made up 13 of her 14

substantive demands for relief. *See* Opening Brief for Appellant ("Pl. Br.") at 8 n.2

But she insists that the Union Defendants are liable to her for the amount of the

fair-share fees she paid prior to *Janus* – at a time when collection of such fees was

expressly authorized by Ohio law and had been upheld by controlling Supreme

Court precedent. Plaintiff contends, in other words, that even though the

8

assessment, collection, and expenditure of fair-share fees for the benefit of all represented employees was indisputably constitutional at the time, the Supreme Court's ruling of June 27, 2018 retroactively transformed those lawful acts into an unconstitutional deprivation for which the defendant unions are liable.

This claim has no merit. Plaintiff does not contest the existence of the good-faith defense – nor could she, given this Court's precedents. She acknowledges on the first page of her brief that "[w]hen the Supreme Court announces a new constitutional right and makes it retroactive, a defendant's good-faith reliance on earlier statutes or court rulings can confer an immunity from *damages*," and she cites the Fifth Circuit's decision in *Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993), as recognizing such a "defense for private parties who violate 42 U.S.C. §1983 in reliance on a statute that is later declared unconstitutional." Pl. Br. at 1-2 (emphasis in original). Nor does Plaintiff question that the standard of good faith was met by the Union Defendants' reliance on Ohio law and the *Abood* precedent prior to the *Janus* decision overruling it.

Rather, the core of Plaintiff's argument is that the good-faith defense does not bar her claim because she has characterized the relief she is seeking as equitable restitution of property wrongfully taken from her, rather than as damages for violation of her First Amendment rights. She concedes that "[i]t may very well be unfair to require the union to pay compensatory … *damages* when its conduct

9

had been authorized by pre-*Janus* statutes and court rulings," while in the same breath asserting that "there is nothing unfair" at all about requiring the union to pay her the same amount as a "restitutionary remedy." Pl. Br. at 36 (emphasis in original).

For his part, Amicus Nathaniel Ogle appears to be at odds with himself, arguing in Part I of his brief that "there is no good faith defense to Section 1983 liability," while acknowledging in Part II that "the Court recognized a good faith defense," albeit only with respect to certain kinds of constitutional claims. Amicus Curiae Brief ("Amicus Br.") at 3, 13 (section headings; capitalization omitted).

As we now show, neither theory is availing. And that is the unanimous holding of the numerous courts that have considered this issue in the year since the *Janus* decision. To date, sixteen district courts have addressed the same claims and arguments as are presented here, and all of them, without exception, have held that the good-faith defense precludes such attempts to hold unions liable for following the law as it existed at the time of their actions.[1]

---

[1] *Danielson v. AFSCME Council 28*, 340 F. Supp. 3d 1083 (W.D. Wash. 2018), *appeal pending*, No. 18-36087 (9th Cir.); *Cook v. Brown*, 364 F. Supp. 3d 1184 (D. Or. 2019), *appeal pending*, No. 19-35191 (9th Cir.); *Carey v. Inslee*, 364 F. Supp. 3d 1220 (W.D. Wash. 2019), *appeal pending*, No. 19-35290 (9th Cir.); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996 (D. Alaska 2019), *appeal pending*, No. 19-35299 (9th Cir.); *Janus v. AFSCME Council 31*, 2019 WL 1239780, at *2 (N.D. Ill. Mar. 18, 2019), *appeal pending*, No. 19-1553 (7th Cir.); *Hough v. SEIU Local 521*, 2019 WL 1274528 (N.D. Cal. Mar. 20, 2019), *amended*, 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019), *appeal pending*, No. 19-15792 (9th Cir.);

After briefly reviewing the development and application of the good-faith

defense (Part I.A), we turn to Plaintiff's principal argument that this defense does

not bar her from obtaining the funds she seeks on a theory of equitable restitution

(Part I.B). We then address her subsidiary arguments – that the good-faith defense

can be invoked only when the defendant's state of mind is an element of the most

closely analogous common-law tort (Part I.C); that it has no application to non-

individual entities (Part I.D); and that the unions' compliance with pre-*Janus*

caselaw is somehow relevant (Part I.E). We conclude by addressing the premise of

---

*Mooney v. Illinois Educ. Ass'n*, 372 F. Supp. 3d 690 (C.D. Ill. 2019), *appeal pending*, No. 19-1774 (7th Cir.); *Bermudez v. SEIU Local 521*, 2019 WL 1615414 (N.D. Cal. Apr. 16, 2019); *Akers v. Maryland Educ. Ass'n*, 376 F. Supp. 3d 563 (D. Md. 2019), *appeal pending*, No. 19-1524 (4th Cir.); *Wholean v. CSEA SEIU Local 2001*, 2019 WL 1873021 (D. Conn. Apr. 26, 2019), *appeal pending*, No. 19-1563 (2d Cir.); *Babb v. California Teachers Ass'n*, 378 F. Supp. 3d 857 (C.D. Cal. 2019), *appeal pending*, No. 19-55692 (9th Cir.); *Doughty v. State Emp. Ass'n*, No. 1:19-cv-00053-PB (D.N.H. May 30, 2019), *appeal pending*, No. 19-1636 (1st Cir.); *Hernandez v. AFSCME California*, 2019 WL 2546195 (E.D. Cal. June 20, 2019); *Diamond v. Pennsylvania State Educ. Ass'n*, 2019 WL 2929875 (W.D. Pa. July 8, 2019), *appeal pending*, No. 19-___ (3d Cir.); *Ogle v. Ohio Civil Serv. Emp. Ass'n*, 2019 WL 3227936 (S.D. Ohio July 17, 2019), *appeal pending*, No. 19-3701 (6th Cir.). Counsel for Plaintiff Lee represented plaintiffs in the *Danielson*, *Carey*, *Crockett*, *Mooney*, *Akers*, *Babb*, *Hernandez*, and *Diamond* cases.

In addition to these recent, directly on-point decisions, several courts addressed the same issue in the wake of the Supreme Court's earlier decision in *Harris v. Quinn*, 134 S. Ct. 2618 (2014), in which the Court held that *Abood* did not extend to state-compensated home-care workers. All reached this same result. *Jarvis v. Cuomo*, 660 F. App'x 72, 75-76 (2d Cir. 2016); *Winner v. Rauner*, 2016 WL 7374258 (N.D. Ill. Dec. 20, 2016); *Hoffman v. Inslee*, 2016 WL 6126016 (W.D. Wash. Oct. 20, 2016).

Plaintiff's affirmative claim, that the *Janus* decision is "retroactive" and therefore requires repayment of her fair-share fees (Part I.F).

**A.    The Courts Have Uniformly Recognized the Availability to Private Parties Sued Under §1983 of a Defense to Liability Based on Good-Faith Reliance on Existing Law**

1.    The widespread adoption of the good-faith defense under §1983 grew out of two leading Supreme Court decisions addressing the scope of liability for nongovernmental defendants under that statute. In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), the Court ruled for the first time that private actors could, under certain circumstances, be held liable along with their governmental counterparts for violations of §1983. And in *Wyatt v. Cole*, 504 U.S. 158 (1992), the Court determined that such private parties could not invoke the doctrine of qualified immunity available to their governmental co-defendants.

In so holding, however, the Court recognized from the outset that "principles of equality and fairness may suggest … that private citizens … should have some protection from liability, as do their government counterparts," when the actions held to be unconstitutional had been undertaken pursuant to presumptively valid existing law. *Id.* at 168. The Court had noted this issue in *Lugar*, recognizing that a good-faith defense might be a necessary corollary to its holding that private parties could be sued under §1983. Acknowledging the "problem" of imposing liability on nongovernmental defendants for "mak[ing] use of seemingly valid state laws," the

Court explained that "this problem should be dealt with … by establishing an affirmative defense." 457 U.S. at 942 n.23.

Thus, although not called upon to decide the question in the cases before it, the Court suggested in *Wyatt* (as it had in *Lugar*) – in dicta and in separate opinions joined by five members of the Court – the availability of a good-faith defense for nongovernmental defendants. *Wyatt*, 504 U.S. at 168-69; *id.* at 169 (Kennedy, J., joined by Scalia, J., concurring); *id.* at 175 (Rehnquist, C.J., joined by Souter and Thomas, JJ., dissenting). The Court subsequently reiterated this dicta in *Richardson v. McKnight*, 521 U.S. 399, 413-14 (1997).

The *Wyatt* Court, in reaching its result, emphasized the distinction between a "defense" and an "immunity," 504 U.S. at 165; and it made clear that its refusal to extend to private-party defendants the "type of objectively determined, immediately appealable immunity" that was available to government officials was because such qualified immunity was "based not simply on the existence of a good faith defense at common law, but on the special policy concerns involved in suing government officials." *Id.* at 166-67. Those "special policy concerns," which had previously led the Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), to "completely reformulate[] qualified immunity along principles not at all embodied in the common law," 504 U.S. at 166 (quoting *Anderson v. Creighton*, 483 U.S. 635, 645 (1987)), were, the Court held, "not transferable to private parties." 504

13

U.S. at 168. At the same time, however, the Court recognized "that private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid should have some protection from liability, as do their government counterparts." *Id.*

The Court thus acknowledged that "the existence of a good faith defense at common law," *id.* at 167, as well as "principles of equality and fairness," *id.* at 168, could justify affording private individuals – who could not invoke *Harlow*-style qualified immunity – a defense to a §1983 claim when they relied in good faith on a presumptively valid statute. Justice Kennedy, in his concurring opinion, underlined the common-law basis for this good-faith defense, noting the "support in the common law for the proposition that a private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law." *Id.* at 174.

The Justices' recognition of the necessity of a good-faith defense for private parties sued under §1983, endorsed either in dicta or in separate opinions by all members of the *Wyatt* Court, has subsequently been adopted by every lower court that has considered the issue. Thus, on remand from the Supreme Court in *Wyatt*, the Fifth Circuit squarely addressed and decided the question, which it found "largely answered by the[] separate opinions" of Justice Kennedy and Chief Justice Rehnquist. The court held "that private defendants sued on the basis of *Lugar* may

14

be held liable for damages under §1983 only if they failed to act in good faith in invoking the unconstitutional state procedures, that is, if they either knew or should have known that the statute upon which they relied was unconstitutional." *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993).

In the quarter-century since that decision, four other courts of appeals – including this Court – have considered the issue, and all have reached the same result. *See Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698-99 (6th Cir. 1996); *Pinsky v. Duncan*, 79 F.3d 306, 311-12 (2d Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275-78 (3d Cir. 1994); *Clement v. City of Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008); *see also Duncan v. Peck*, 844 F.2d 1261 (6th Cir. 1988) (pre-*Wyatt* decision); *Jarvis v. Cuomo*, 660 F. App'x 72, 75-76 (2d Cir. 2016) (unpublished). These decisions have been followed by numerous district courts, including those cited above that have applied the defense in rejecting claims identical to the one presented here. *See supra note* 1.[2] We are unaware of any court since *Wyatt* that

---

[2] A sampling of district court cases applying the good-faith defense in contexts other than that presented here includes: *Franklin v. Fox*, 2001 WL 114438 (N.D. Cal. Jan. 22, 2001), at *3-7 (Sixth Amendment denial of counsel); *Nemo v. City of Portland*, 910 F. Supp. 491, 498-99 (D. Or. 1995) (First Amendment free speech rights); *Hunsberger v. Wood*, 564 F. Supp. 2d 559, 571-73 (W.D. Va. 2008) (Fourth Amendment illegal search), *rev'd on other grounds*, 570 F.3d 546 (4th Cir. 2009); *Goodman v. Las Vegas Metro. Police Dep't*, 2013 WL 819867, at *2 (D. Nev. Mar. 5, 2013) (Fourth Amendment unlawful detention); *Robinson v. San Bernardino Police Dep't*, 992 F. Supp. 1198, 1207-08 (C.D. Cal. 1998) (Fourth,

has ever held, as Amicus contends, that "there is no good faith defense to section 1983 liability." Amicus Br. at 3 (capitalization deleted).[3]

It is, in sum, the unanimous view of the many courts that have addressed the issue that nongovernmental actors sued under §1983 – while not immune from suit entirely as are government officials under the doctrine of qualified immunity – are entitled to invoke a good-faith defense that shields them from liability for following existing law.[4]

---

Eighth, Thirteenth, and Fourteenth Amendment claims); *Doby v. Decrescenzo*, 1996 WL 510095, at *21 (E.D. Pa. Sept. 9, 1996) (Fourth, Eighth, and Fourteenth Amendment claims), *aff'd*, 171 F.3d 858 (3d Cir. 1999); *Lewis v. McCracken*, 782 F. Supp. 2d 702, 714-15 (S.D. Ind. 2011) (First Amendment free speech).

[3] Amicus devotes the first half of his brief to the argument that "there is no good faith defense" without ever acknowledging the existence of this substantial body of caselaw holding the opposite. *See* Amicus Br. at 3-13. He also asserts that acceptance of a good-faith defense would mean that "every defendant that deprives any person of any constitutional right could escape damages liability by claiming it had a good faith, but mistaken, belief its conduct was lawful." *Id.* at 11. That caricature is not, of course, consistent with what any court has held; and it is certainly inconsistent with the basis for application of the good-faith defense here, where the Union Defendants relied on a presumptively valid statute – and not just a statute whose constitutionality had not been tested, but one that indisputably *was* constitutional under judicial precedent that was controlling at the time of the conduct at issue.

[4] While not contesting the existence of the good-faith defense, Plaintiff attempts to portray this as a matter of dispute among the courts of appeals, asserting that "[o]ther appellate court rulings … have categorically rejected a 'good faith' defense for private defendants who are sued under section 1983." Pl. Br. at 12-13 n.6. That is not correct. The three cases Plaintiff cites are all pre-*Wyatt* decisions, which held only – as did *Wyatt* subsequently – that nongovernmental defendants were not entitled to the qualified immunity that is available to public officials.

**2.**     Application of the good-faith defense precludes Plaintiff's demand for repayment of fair-share fees collected prior to the *Janus* decision. There is no dispute that these fees were assessed and received under state law specifically authorizing their assessment. *See* Ohio Rev. Code §4117.09(C). That statute was, as a matter of law, entitled to a presumption of validity. As the Second Circuit has put it, "it is objectively reasonable to act on the basis of a statute not yet held invalid." *Pinsky*, 79 F.3d at 313. The court cited in this connection the venerable holding of *Birdsall v. Smith*, 122 N.W. 626, 627 (Mich. 1909), that under the common law "[e]very statute should be considered valid until there is a judicial determination to the contrary." *Pinsky*, 79 F.3d at 313. Similarly, Justice Kennedy relied on *Birdsall* in his *Wyatt* opinion for the proposition that "a private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law." 504 U.S. at 174. And, in this case, there is far more than the presumption of statutory validity – there is, in *Abood*, a controlling Supreme Court precedent dating back over 40 years that explicitly held fair-share requirements constitutional under the First Amendment.

Because the presumption of statutory validity is sufficient "to allow a defendant to argue that he acted in subjective good faith," *id.*, the Union Defendants' reliance on Ohio's statutory authorization of fair-share fees, and on

Supreme Court precedent upholding such authorization "prior to [the *Janus*]

determination of unconstitutionality," was reasonable and constituted good-faith

reliance "as a matter of law." *Id*.[5]

That conclusion is unaffected by dicta in several Supreme Court opinions

prior to *Janus* suggesting that the Court might at some point revisit *Abood*. As the

Court has repeatedly explained, its decisions remain valid and binding unless and

until the Court itself chooses to overrule them, notwithstanding any critical

comments in more recent opinions: "[T]he Supreme Court has specifically stated

that the lower courts are to treat its prior cases as controlling until the Supreme

Court itself specifically overrules them." *Steele v. Industrial Dev. Bd.*, 301 F.3d

401, 408-09 (6th Cir. 2002) (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997));

---

[5] Because no question is raised on appeal of whether the Union Defendants' reliance on Ohio law and the *Abood* precedent prior to the *Janus* decision was sufficient to allow them to invoke the good-faith defense, the Court has no occasion here to address the question whether the good-faith determination requires a subjective or an objective showing. While in some cases application of the good-faith defense may well necessitate an inquiry into the defendant's state of mind, *see*, *e.g.*, *Vector Research*, 76 F.3d at 699, that is not the case where the basis for the defense is, as the district court put it here, that "individuals are entitled to rely upon binding United States Supreme Court precedent." Memorandum of Opinion, RE 56, Page ID #727; *see also Ogle*, 2019 WL 3227936, at *10 (distinguishing *Vector Research* on this basis). Thus, the issue can be decided as a matter of law in a case of this nature, because "where there is a valid state statute constitutional under then-current Supreme Court precedent, subjective good faith may be presumed." *Mooney*, 372 F. Supp. 3d at 706. That being the case, "Defendants' reliance on *Abood* was not only objectively reasonable but shows subjective good faith as a matter of law." *Id.*

*see also Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). Indeed the *Janus* Court itself confirmed that *Abood* remained binding precedent until its overruling in *Janus*, noting that the district court had "correctly" dismissed Plaintiff Janus' claim as "foreclosed by *Abood*." 138 S. Ct. at 2462.

Private parties, obviously, should not be held to a higher standard of prescience than the federal courts. The good-faith defense is based on the proposition that citizens are entitled to rely on the law as it exists at the time of their actions, and are not required, at the risk of substantial liability, to order their affairs according to their interpretation, based on reading the tea leaves and counting the votes, of what the Supreme Court is likely to say next. The good-faith defense not only shields private parties from liability incurred by their reliance on existing law; it also promotes the "strong public interest in encouraging private citizens to rely on valid state laws," *Wyatt*, 504 U.S. at 179-80 (Rehnquist, C.J., dissenting), thus protecting the rule of law itself.

**B.    Plaintiff Cannot Avoid the Good-Faith Defense by Characterizing Her Claim as an Equitable Demand for Return of Property**

The core of Plaintiff's argument is that she has brought a claim in restitution for the return of property that was wrongfully taken, and that "wrongfully taken property must always be returned." Pl. Br. at 13. There is, she contends, no good-faith defense to such a claim for restitution. This attempt to get around the defense fails for multiple reasons. Not only does the claim Plaintiff asserts – for redress of the alleged violation of her First Amendment rights – sound in law rather than equity, but even if it were otherwise, equitable principles would lead to the same result as does the good-faith defense.

**1.    Plaintiff Is Seeking Damages for Violation of Her First Amendment Rights, Not Equitable Restitution of Property**

**(a)**  As this Court has observed, "when a court 'compel[s] the defendant to pay a sum of money to the plaintiff,' the remedy '[a]lmost invariably' qualifies as 'money damages' (and thus as legal relief)." *Central States Health & Welfare Fund v. First Agency, Inc.*, 756 F.3d 954, 960 (6th Cir. 2014) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)). Plaintiff cannot make it otherwise "by placing a different label – 'restitution' rather than 'damages' – on the money award." *Id.*

20

Plaintiff's attempt to characterize this litigation as a suit for the restitution of wrongfully taken property is particularly inapt. As her complaint asserts, what she seeks is "redress for the defendants' … violations of her constitutionally protected rights." Complaint, RE 1, Page ID #1. The gravamen of Lee's complaint is that her First Amendment rights were violated by the fair-share requirement because she was compelled to support (financially) union expressive activities, including "collective-bargaining activities," of which she "disapprove[d]." *Id.* ¶ 13, Page ID #3. As Plaintiff reiterates in the first paragraph of her Argument, the wrong for which she seeks redress is that "[t]he union 'deprived' Ms. Lee of her constitutional rights." Pl. Br. at 11. In short, as even Amicus recognizes, this is not a suit for restitution of property but "a First Amendment compelled-speech claim," Amicus Br. at 21, for which the remedy would be an award of damages.

That this is a legal claim for damages for a First Amendment violation rather than a claim for restitution of property is also evident from consideration of a counter-example: If state law had required that an equivalent amount be withheld from Plaintiff's paychecks and diverted to another entity to be used for some non-expressive purpose (such as to pay mandatory health insurance premiums), Plaintiff would have no claim at all – even though the effect on her "property" (wages) would be the same. If she has a claim here, it is one that is based *solely* on the Supreme Court's holding, in *Janus*, that requiring union nonmembers to help

21

pay for collective bargaining violates their First Amendment rights of speech and association.

As one district court has explained in response to the same argument: "Plaintiffs do not just claim that [the union] unjustly took [their] money; they claim that [the union] utilized a state statute to violate their First Amendment rights by compelling them to support union activities." *Carey v. Inslee*, 364 F. Supp. 3d 1220, 1230 (W.D. Wash. 2019).[6] In pursuing her §1983 claim under *Janus*, Plaintiff is seeking compensation for that harm. Any relief the Court might award in response to her claim would constitute an award of damages for violation of her constitutional rights – just like the damages awards sought by the plaintiffs in cases like *Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993), for the violation of their constitutional rights (in that case due process rights), which were barred by the good-faith defense.

**(b)**  Plaintiff's argument that the remedy she seeks is an equitable one also fails because that remedy – an award of an amount of money equal to the fair-share fees she paid – would necessarily come from the Union Defendants' general assets rather than from an identifiable fund subject to an equitable lien.

---

[6] *See also Danielson v. AFSCME Council 28*, 340 F. Supp. 3d 1083, 1086 (W.D. Wash. 2018) ("Plaintiffs' First Amendment claim here turns not upon the Union Defendant's receipt of their 'property' but upon the dignitary harm resulting from being compelled to support speech with which they disagree.") (internal brackets and quotation marks omitted).

An equitable claim for restitution is one that seeks the return of a specific, identifiable object, including, in some instances, money that is segregated from other assets in a fund against which an equitable lien can be imposed. *See generally Knudson*, 534 U.S. at 212-14. As this Court has explained, "[a] court awards equitable restitution when it imposes a constructive trust or lien on 'particular funds or property in the defendant's possession' but legal restitution when it holds the defendant liable for a sum of money." *Central States*, 756 F.3d at 960 (quoting *Knudson*, 534 U.S. at 214).

Neither in her Complaint nor otherwise does Plaintiff "identif[y] a 'specific fund' to which [she is] entitled." *The Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 662 (9th Cir. 2019). Her contention appears to be, rather, that the remedy she seeks sounds in equitable restitution because it is for a sum of money measurable by the amount of fair-share fees she paid. This Court addressed just such an argument in *Central States*. There, the plaintiff characterized the remedy it sought as equitable, on the ground that it was "measured by the amount of [the] bills [plaintiff] paid," which made the funds "specifically identifiable." 756 F.3d at 960. Rejecting that line of reasoning, this Court explained that "a money judgment does not become equitable merely because its size is known or otherwise identifiable in that way. It is the *fund*, not its *size*, that must be identifiable." *Id.* (emphasis in original). Absent identification of such a fund upon which an

23

equitable lien could be imposed, any recovery would "come out of [Defendants']
assets in general, not out of any fund in particular." *Id.* at 960-61.

Under these circumstances "a judgment in plaintiffs' favor would have no
connection to any particular fund whatsoever. Defendants would simply be
required to pay a certain amount of money, and they could 'satisfy that obligation
by dipping into any pot' they like.… That is restitution at law, not equity." *The
Depot*, 915 F.3d at 662 (quoting *Central States*, 745 F.3d at 960).

An additional problem for Plaintiff's theory is that the fair-share fees she
paid over the years – far from "remain[ing] in a vault, to be returned like a seized
automobile," *Babb v. California Teachers Ass'n*, 378 F. Supp. 3d 857, 876 (C.D.
Cal. 2019) – were expended to provide Plaintiff (and other bargaining-unit
members) with ongoing collective bargaining services. In such a case, where the
funds at issue have been dissipated, "[t]he plaintiff then may have a personal claim
against the defendant's general assets – but recovering out of those assets is a *legal*
remedy, not an equitable one." *Montanile v. Board of Trustees*, 136 S. Ct. 651, 658
(2016) (emphasis in original).[7]

---

[7] Plaintiff purports to identify an exception to this rule for cases where the
money at issue has been "mingled with a defendant's assets or accounts," in which
case "the plaintiff may pursue an equitable lien against those co-mingled assets."
Pl. Br. at 32. But as the Court pointed out in *Montanile*, "most equity courts and
treatises rejected" this "swollen assets doctrine." 136 S. Ct. at 661. In any event,
Plaintiff's complaint contains no allegation of such co-mingling of assets – as
would have been necessary in order to state a claim in equity. *See*, *e.g.*, *The Depot*,

24

## 2.    Equity Would Not Require Repayment of Plaintiff's Fair-Share Fees

Even if – contrary to what we have just shown – Plaintiff did have an equitable claim for restitution against the Union Defendants, she is simply wrong that a court sitting in equity would be required to order the repayment of the amount she paid in fair-share fees. Section 1983, of course, provides a remedy both "in an action at law" and a "suit in equity," 42 U.S.C. §1983, and it is not apparent why the good-faith defense should apply to one and not the other.

Plaintiff bases her argument on a footnote in *Wood v. Strickland*, 420 U.S. 308, 314-15 n.6 (1975), which she claims stands for the broad proposition that both "qualified immunity and 'good-faith' can protect a defendant only from liability for damages," and are "categorically inapplicable to claims for equitable relief of any sort." Pl. Br. at 28-29. But the "equitable relief" at issue in *Strickland* was declaratory and injunctive relief – not any form of monetary relief – and with regard to monetary remedies Plaintiff's assertion is simply incorrect: "Regardless of what label is placed on the monetary relief which [the plaintiff] wants, 'equitable' or 'legal damages,' it remains a personal monetary award out of the official's own pocket," and "the rationale of the qualified immunity doctrine

---

915 F.3d at 662 (rejecting a similar contention where "the facts and allegations supporting that proposition [do not] appear in [plaintiffs'] complaint") (quoting *Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016)).

25

precludes this relief." *Lenea v. Lane*, 882 F.2d 1171, 1179 (7th Cir. 1989); *see also*

*Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1472 n.1 (9th Cir.

1993); *Clanton v. Orleans Par. Sch. Bd.*, 649 F.2d 1084, 1101 n.20 (5th Cir. 1981).

More broadly, the law is the opposite of Plaintiff's contention that a court

sitting in equity would have no alternative but to order restitution of her fair-share

fees. The Supreme Court has explained that,

> in constitutional adjudication as elsewhere, equitable remedies are a
> special blend of what is necessary, what is fair, and what is
> workable …. In equity, as nowhere else, courts eschew rigid
> absolutes and look to the practical realities and necessities inescapably
> involved in reconciling competing interests, notwithstanding that
> those interests have constitutional roots.

*Lemon v. Kurtzman*, 411 U.S. 192, 200-01 (1973) (plurality op.) ("*Lemon II*").

That approach reflects the common-law principle that "[r]estitution is not of mere

right. It is ex gratia, resting in the exercise of a sound discretion; and the court will

not order it where the justice of the case does not call for it …." *Atlantic Coast*

*Line R. Co. v. Florida*, 295 U.S. 301, 310 (1935) (quoting *Gould v. McFall*, 12 A.

336, 337 (Pa. 1888)).

In weighing the equities in a claim for equitable restitution, the fundamental

question for a court is whether the money sought to be repaid "was received in

such circumstances that the possessor will give offense to equity and good

conscience if permitted to retain it." *Id.* at 309. Under that standard it would be an

abuse of discretion for a court to order restitution where, as here, the property

26

consisted of funds that were received and expended pursuant to and in reliance on
a presumptively valid state statute requiring the unions to expend the funds to
provide services benefiting union members and nonmembers alike, and where the
claim of unjust enrichment rests entirely on an after-the-fact determination that the
law was unconstitutional. Claims for restitution in such circumstances must take
account of the principle that "state officials and those with whom they deal are
entitled to rely on a presumptively valid state statute." *Americans United v. Prison
Fellowship Ministries, Inc.*, 509 F.3d 406, 426-27 (8th Cir. 2007) (quoting *Lemon
II*, 411 U.S. at 209).

In *Americans United*, the Eighth Circuit – while affirming a judgment
striking down taxpayer funding of faith-based prison rehabilitation programs under
the Establishment Clause – reversed the lower court's order that the defendant
repay the public funds it had (unconstitutionally) received and expended. That
order, the Eighth Circuit held, was an abuse of discretion because the district court
"gave no weight to the fact that specific statutes, presumptively valid, authorized
the … funding." *Id.* at 427. In so holding, the Eighth Circuit relied on the Supreme
Court's decision in *Lemon II*, rendered after the Court, in *Lemon v. Kurtzman*, 403
U.S. 602 (1971) ("*Lemon I*"), had struck down under the Establishment Clause a
Pennsylvania statute authorizing state funding of parochial schools. On remand for
consideration of remedies, the district court declined to enjoin the State from

27

continuing to make payments to reimburse the schools for services they had rendered, prior to the *Lemon I* decision, in reliance on the statute. The Supreme Court affirmed, explaining that "reliance interests weigh heavily in the shaping of an appropriate equitable remedy." *Lemon II*, 411 U.S. at 203 (citing cases).

The same is true here, and for a second reason as well. It would be inequitable to require the Union Defendants to pay back to Plaintiff the fair-share fees they previously received from her and spent – as they were required by law to do – in representing her and all other bargaining-unit members. The remedy of restitution would be inequitable, and will be refused, "where the payor obtained a benefit that he intends to retain from the payment that he made and now seeks to take back." *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 651 (7th Cir. 2001). Requiring restitution by the Union Defendants of money that they expended for representational purposes on behalf of the entire bargaining unit would "stand[] that remedy on its head," as Plaintiff certainly does not "propose to give back the benefits that the union's efforts bestowed on [her]." *Gilpin v. AFSCME*, 875 F.2d 1310, 1316 (7th Cir. 1989); *see Hernandez v. AFSCME California*, 2019 WL 2546195, at *3 (applying *Gilpin* and noting that *Janus*' constitutional holding did not change "the fact that nonunion members received such benefits").

In short, whether Plaintiff's claim is deemed legal or equitable does not change the result, even assuming *arguendo* that the good-faith defense itself does not apply to the latter.

### 3.  Plaintiff's Broad Rule that "Wrongfully Taken Property Must Always Be Returned" Is Neither Accurate Nor Apt

Underlying Plaintiff's equitable restitution argument is her attempt to extrapolate from numerous fact-specific holdings to a broad rule that "wrongfully taken property must always be returned." Pl. Br. at 13; *see id*. at 14-26. It should be apparent from the foregoing discussion of equitable remedies that, whatever may be the case in any specific circumstance, this broad proposition does not correctly state the law. The cases Plaintiff cites – a potpourri of decisions involving issues such as unconstitutional taxes, fines paid to the government, and tangible property seized under unconstitutional replevin or impoundment procedures – do not establish any "principle … universal in the law," *id.* at 26, that "wrongfully taken" money (or even tangible property) "must always be returned." *Id.* at 13. The cited cases involve distinct remedial doctrines and issues.

Indeed, some of the cases on which Plaintiff relies *reject* the supposedly "universal" rule Plaintiff claims they establish. For example, in asserting that a tax held to be unconstitutional must always be refunded, *id.* at 15, Plaintiff cites *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 98-99 (1993). The cited pages,

however, enunciate no such broad principle but explain only the retroactivity implications of the Court's holding in a previous, related case. In fact, *Harper*'s holding with respect to remedies was just the opposite of Plaintiff's categorical assertion that unconstitutionally collected taxes must always be refunded: The Court explained that "federal law does not necessarily entitle [plaintiffs] to a refund," *id.* at 100, and it emphasized the state's "flexibility" in determining how to remedy the constitutional violation. *Id.* at 100-02; *see also McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 51-52 (1990) (same).

Even apart from *Harper*, the proposition that unconstitutionally assessed taxes must always be returned is inaccurate. While property owners who succeed in having a tax levy declared unconstitutional have a *prima facie* claim in restitution, "[t]he court may nevertheless limit or deny restitution if the court finds that an obligation to refund the illegal tax would result in public hardship and disruption, out of proportion to Owners' injury and to the public interest in lawful tax collection." Restatement (Third) of Restitution and Unjust Enrichment §19 cmt. f, illus. 19 (2011). The same is true if the court finds that the unlawful taxes were expended for services benefiting the objecting taxpayers. *Id.*, illus. 17.

Similarly, the Supreme Court's decision in a case that is closer to home refutes the broad principle Plaintiff asserts. In a 1984 fair-share case decided under the *Abood* regime, the Court relied on principles of equity in declining to order

30

restitution of the portion of fair-share fees that helped pay for a union's program of death benefits. The Court reasoned that, even assuming it was unconstitutional to include such union expenditures in the fee charged to nonmembers, the equities did not call for restitution because the nonmembers had remained entitled to the benefits of the plan. *Ellis v. Railway Clerks*, 466 U.S. 435, 454-55 (1984).

Finally, Plaintiff misstates the import even of the good-faith defense cases she cites. She claims that *Wyatt v. Cole*, 994 F.2d at 1115, establishes that property seized "in good-faith reliance on a replevin statute that is later declared unconstitutional" must be returned. Pl. Br. at 17-18. But what the Fifth Circuit noted on this issue was simply that defendant Cole had been ordered to return the property by the state court, which had dismissed his claim under state law, *well before* the replevin statute was held unconstitutional in federal court, *see* 994 F.2d at 1115 – and the issue of who was entitled to the seized cattle and tractor was not presented in the federal litigation.[8] Likewise, in *Clement v. City of Glendale*, 518

---

[8] Indeed, the *Wyatt* defendant might well have still had a claim on the plaintiff's cattle or other chattels as payment for the debt he alleged the plaintiff owed him. The constitutional issue had nothing to do with who had a right to that property, but rather with whether sufficient notice had been provided to permit the plaintiff to contest the defendant's claim. After returning the property seized in replevin, the *Wyatt* defendant would still have had recourse through a constitutionally proper lawsuit to collect the debt owed to him, whether through a properly noticed attachment of the same chattels or otherwise. In that respect as well, the situation of the Union Defendants here is different. Were the unions required to pay back the fair-share fees they had received and (as required by law) expended to provide representational services to Plaintiff and other bargaining-

F.3d 1090 (9th Cir. 2008), the company that towed a vehicle at the behest of police did not even argue that it had any property or equitable interest of its own in the towed vehicle, whether it was towed constitutionally or not.

In short, neither these cases nor the others Plaintiff cites stand for the "universal" proposition asserted throughout her brief,[9] and they assuredly do not preclude application of the good-faith defense to shield the Union Defendants from liability for their reliance on existing law and controlling precedent in receiving fair-share fees prior to *Janus*.

### C.    Plaintiff Cannot Avoid the Good-Faith Defense with Her "Most Analogous Tort" Argument

Plaintiff also attempts to contest application of the good-faith defense by arguing that it is available only where the defendant's state of mind is an element of the common-law tort most closely analogous to the plaintiff's particular §1983

---

unit members, they would have no recourse enabling them to deduct the value of the services they provided from the amounts repaid. For this reason as well, Plaintiff's attempted analogy is inapt.

[9] Plaintiff's cases involving repayment of financial penalties accompanying criminal convictions, Pl. Br. at 16-18, simply held that the punishment could not remain in effect once the conviction was vacated. Similarly, *Timbs v. Indiana*, 139 S. Ct. 682 (2019), held no more than that the Eighth Amendment's Excessive Fines clause was incorporated into the Fourteenth Amendment and thus made applicable to the states, while *United States v. Rayburn House Office Bldg.*, 497 F.3d 654 (D.C. Cir. 2007), held that privileged materials seized in violation of the Speech and Debate clause (but not other seized documents) must be returned to the Congressman from whose office they were taken. *See id.* at 663-66. These cases no more support Plaintiff's broad principle than do those discussed in text.

claim. *See* Pl. Br. at 26-28. She asserts that the tort most closely analogous to her

First Amendment claim is conversion, and that a good-faith defense is unavailable

here because conversion is a "strict-liability tort." *Id*. at 27. Amicus makes much

the same argument, although he focuses on the elements of his constitutional claim

rather than on an analogous common-law tort. Amicus Br. at 13-22. Both are

mistaken, for at least two reasons.

> **1.    The Good-Faith Defense Does Not Turn on
> Identification of an Analogous Common-Law Tort
> Requiring Scienter**

Plaintiff is, in the first place, far off the mark in her attempt to draw from the

Supreme Court's *Wyatt* opinion the conclusion that the good-faith defense is

available only if the common-law tort most analogous to her particular §1983

claim contained an element of scienter. Such a requirement is found nowhere in

*Wyatt*. The Court, in that case, reviewed the history of immunities and defenses at

common law, including common-law scienter requirements, in order to answer the

categorical question of whether qualified immunity should be extended to

nongovernmental defendants. It concluded that the policy reasons justifying

qualified immunity for public officials under *Harlow* did not apply to private

parties – but that a good-faith defense could be available to such nongovernmental

defendants. *See generally* 504 U.S. at 164-69. In doing so, the Court nowhere

suggested that application of that defense would require a case-by-case inquiry into

the elements of the most analogous tort – any more than the application of qualified immunity requires such an inquiry.

The notion that a good-faith defense can be invoked only with respect to some §1983 claims and not others is fundamentally misplaced. This is not, as Amicus would have it, "a defense to a particular due process deprivation," where the relevant question is whether "state of mind is material to" such a deprivation. Amicus Br. at 13-14. It is, rather, an affirmative defense intended to protect citizens' reliance on the law as it exists at the time of their actions, and the relevant question is whether, given the state of the law at the time of the conduct in question, the defendant reasonably relied on the statute. There is no basis for allowing such a defense with respect to reliance on certain kinds of laws but not others. To the contrary, as the district court noted in the *Janus* case on remand, "the relevant question for a good-faith defense is not the nature of the particular statute on which the defendant relied, but whether that reliance was in good faith." *Janus v. AFSCME Council 31*, 2019 WL 1239780, at *2 (N.D. Ill. Mar. 18, 2019). The inquiry is, in other words, no different whether the statute upon which the defendant relied was a Mississippi replevin statute (as in *Wyatt*) or an Ohio fair-share law (as in this case).[10]

---

[10] The attempt by Amicus to distinguish cases such as *Wyatt* on the ground that "malice and lack of probable cause are elements of the due process claim," Amicus Br. at 17, fails even on its own terms. While the *Wyatt* defendant's state of

It is no accident that the good-faith defense was recognized in decisions holding that private parties – although subject to suit under §1983 – were not entitled to the qualified immunity that public officials, sued alongside them, could invoke. And it is very much to the point that even though the origins and contours of the doctrine of *qualified immunity* itself lie in the common law, *see Wyatt*, 504 U.S. at 163-64, application of *that* doctrine is by no means limited to §1983 claims analogous to common-law torts requiring scienter. Rather, "the doctrine of qualified immunity reflects a balance that has been struck 'across the board,'" *Anderson v. Creighton*, 483 U.S. 635, 642 (1987) (quoting *Harlow*, 457 U.S. at 821 (Brennan, J., concurring)), applying categorically to public officials in §1983 actions – whether or not the defendant's state of mind is an element of the most

---

mind would have been relevant to a common-law claim of abuse of process or malicious prosecution, it was not at all relevant to the *constitutional* claim that the plaintiff's property had been seized in replevin without due process of law. *E.g.*, *Dodds v. Richardson*, 614 F.3d 1185, 1209 n.2 (10th Cir. 2010) ("procedural due process violations focus on the sufficiency of the procedural protections afforded the plaintiff, not the state of mind of the officials who establish or apply the policies"). In *Wyatt*, just as in this case, the defendant's state of mind was irrelevant to the question whether the plaintiff's constitutional right was violated. Thus, while Amicus is correct that "[m]alice and lack of probable cause are not elements of, or a defense to, the First Amendment deprivation in this case," Amicus Br. at 19, they were not "elements of, or a defense to, the [due process] deprivation" in *Wyatt* either. If it were the case that the availability of the good-faith defense turned on the existence of a state-of-mind element in the claim of or defense to the alleged constitutional deprivation, the outcome in *Wyatt* and similar due process cases would have been different.

analogous common-law tort. *See*, *e.g.*, *Occupy Nashville v. Haslam*, 769 F.3d 434 (6th Cir. 2014) (applying qualified immunity to First Amendment claim).

It is, accordingly, simply incorrect to state, as does Plaintiff, that "[w]henever a section 1983 defendant asserts a non-textual defense such as immunity or 'good faith,' *Wyatt* compels courts to look to the most analogous common-law tort – and it allows courts to recognize the proposed defense only if that most analogous tort would have conferred similar defenses at the time section 1983 was enacted." Pl. Br. at 27. Neither *Wyatt* nor any other case supports that proposition – either for qualified immunity or the good-faith defense.

The attempt to engraft a common-law tort analogy onto the good-faith defense thus has no basis, and it serves no purpose other than to deny that defense arbitrarily to some nongovernmental defendants who reasonably relied on a presumptively valid statute.[11] Unsurprisingly, therefore, the argument Plaintiff advances has never been accepted by any court as a basis for refusing to apply the good-faith defense. And the courts that have considered claims involving pre-

---

[11] The argument is also inconsistent with the Supreme Court's emphasis with respect to another §1983 affirmative defense (statute of limitations) on avoiding a rule that demands "an analysis of the particular facts of each claim," which "inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of §1983." *Wilson v. Garcia*, 471 U.S. 261, 272 (1985).

*Janus* fair-share fees have unanimously rejected the attempt to limit application of the good-faith defense on the basis urged here.[12]

### 2. In Any Event, the Tort of Conversion Is Not Analogous to Plaintiff's First Amendment Claim

Plaintiff's attempt to evade the good-faith defense also fails on the second prong of her argument. Having attempted (wrongly, as just shown) to establish that a court considering a non-textual defense under §1983 must "look to the most analogous common-law tort," Pl. Br. at 27, she asserts – without further reasoning or citation to authority – that the strict-liability tort of conversion is "most analogous to the union's unconstitutional confiscation of wages." *Id.* at 28. In fact, conversion is a remarkably poor analogue to Plaintiff's First Amendment claim in this case, and there are several common-law torts – all of them with an element of scienter – that are a better fit.

Conversion is not a good analogue for at least two reasons. First, conversion occurs when the defendant takes possession and control of an item of property belonging to the plaintiff by a "wrongful act." *6750 BMS, L.L.C. v. Drentlau*, 62 N.E.3d 928, 934 (Ohio Ct. App. 2016). This tort thus has no analogy to the central and necessary characteristic of Plaintiff's §1983 claim, which is for repayment of

---

[12] *See*, *e.g.*, *Danielson*, 340 F. Supp. 3d at 1086; *Cook*, 364 F. Supp. 3d at 1190-92; *Carey*, 364 F. Supp. 3d at 1229-31; *Crockett*, 367 F. Supp. 3d at 1003-06; *Babb*, 378 F. Supp. 3d at 872-73; *Ogle*, 2019 WL 3227936, at *7-8; *see also supra* note 1 (citing additional cases).

monies that – far from being some unilateral "confiscation" or "seizure" of Plaintiff's wages – were transmitted to the union by the School District employer *pursuant to the specific authorization of state law*.[13] In addition, conversion traditionally applied only where the item of property allegedly converted was a specific "chattel," not an intangible contractual expectancy such as an interest in wage payments promised in exchange for services rendered. Indeed, even today in most jurisdictions, lost wages are not a type of property on which one could premise a conversion claim. *See*, *e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1101-15 (D. Nev. 2007) (surveying law from multiple jurisdictions).

A far better analogy to Plaintiff's claim is the tort of abuse of process, which, as the Supreme Court explained in *Wyatt*, provides a "cause[] of action against private defendants for unjustified harm arising out of the misuse of governmental processes." 504 U.S. at 164; *see also* Joel Bishop, Commentaries on the Non-Contract Law §220, at 88 (1889) ("unjustifiable employment of the

---

[13] That the statute authorizing fair-share fees was subsequently held unconstitutional does not, of course, change that point. The Supreme Court long ago rejected the doctrine that a statute, once held unconstitutional, retroactively becomes a nullity for all purposes: "The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored." *Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374 (1940).

38

processes of the law").[14] Such a misuse of governmental processes is precisely what Plaintiff alleges here – that the Union Defendants availed themselves of a state-created legal process (the statutory provision authorizing public employers to deduct fair-share fees from their employees' paychecks and transmit them to the union) to obtain the funds at issue. Without the existence of such state-created legal processes, the Union Defendants would have had no way to "take 'fair-share fees' from the wages of non-union members," Pl. Br. at 1, or to "seize[] agency fees from Sarah Lee and other employees without their consent," Amicus Br. at 19.

Indeed, it might well be added that a private party sued under §1983 *necessarily* is being sued for alleged (mis-)use of governmental processes, for without a claim that the defendant used some governmental process there would be no basis for asserting §1983 liability against the private defendant. As the Court explained in *Lugar*, for a private party to be liable under §1983, "the deprivation must be caused by the exercise of some right or privilege created by the State." 457 U.S. at 937. The tort of abuse of process thus provides an appropriate common-law analogy, if one were needed, for §1983 claims against nongovernmental defendants generally.

---

[14] *See generally* Aaron Tang & Fred O. Smith Jr., *Can Unions Be Sued for Following the Law?*, 132 Harv. L. Rev. F. 24, 32-35 (2018), https://harvardlawreview.org/2018/11/can-unions-be-sued-for-following-the-law/.

Nor is there any question that this tort contained the element of scienter upon which Plaintiff insists: At common law it was the burden of a plaintiff bringing an abuse of process claim "to establish as elements of the tort both that the defendant acted with malice and without probable cause." *Wyatt*, 504 U.S. at 176 n.1 (Rehnquist, C.J., dissenting) (emphasis omitted).

Alternatively, Plaintiff's §1983 claim could be analogized to the tort of interference with contract – in this case, interference with the employee's contractual right, under the collective bargaining agreement that governed her employment, to receive agreed-upon wages. Malice or lack of justification was an element of the tort of interference with contract at common law. *See* Restatement (First) of Torts §766 (1939).

At a minimum, both abuse of process and interference with contract provide analogous torts, which include state-of-mind requirements, that are much closer to Plaintiff's §1983 claim than the tort of conversion she proposes. Application of the good-faith defense thus would be appropriate here even if – contrary to what we showed above – the Court were to accept Plaintiff's argument that the availability of the defense turns on the nature of a common-law tort analogous to the particular §1983 claim.

### D.    The Reasons for Denying Qualified Immunity to Municipal Entities Are Not Relevant to the Good-Faith Defense

Plaintiff also argues that the good-faith defense is unavailable to the Union Defendants because they are not individuals but "entities" – and thus akin to municipal entities that are not entitled to qualified immunity. *See* Pl. Br. at 37-40. This attempted analogy is misplaced. The policy reasons that led the Court to grant qualified immunity to public officials but deny it to municipalities rested principally on concerns about "paralyzing the governing official's decisiveness and distorting his judgment on matters of public policy." *Owen v. City of Independence*, 445 U.S. 622, 655-56 (1980). As one district court has explained, these considerations were specific to the context of qualified immunity:

> These concerns do not inhere in private institutional defendants. Defendants did not make a policy which ultimately was held unconstitutional; the State of Illinois did. Defendants are not governmental actors who should consider at every step the potential they might be violating constitutional rights; they are private actors entitled to rely on the State's laws. So, the reasons against extending qualified immunity to municipal corporations are inapposite.

*Mooney v. Illinois Educ. Ass'n*, 372 F. Supp. 3d 690, 705 (C.D. Ill. 2019); *see also id.* (explaining that the anomaly "is not that private institutions are treated the same as private individuals, but rather that public institutions are not treated the same as public officials," and that this anomaly was justified by the policy concerns underlying the doctrine of qualified immunity).

41

Unsurprisingly, therefore, no court has ever held the good-faith defense inapplicable on this ground. To the contrary, this Court, as well as others, have applied the good-faith defense where the defendants were corporations, business associations, or other non-individual entities. *See*, *e.g.*, *Vector Research*, 76 F.3d at 692 (law firm); *Jordan*, 20 F.3d at 1250 (same); *Clement*, 518 F.3d at 1090 (corporation). And that is for good reason, as it would make little sense to protect the ability of private individuals to manage their affairs in reliance on existing state laws and judicial precedents, while denying that protection to associations of private individuals such as businesses or labor unions.

### E.    Plaintiff Cannot Avoid the Good-Faith Defense by Raising the Unrelated Issue of Compliance with pre-*Janus* Law

Plaintiff's final attempt to avoid application of the good-faith defense is the somewhat puzzling assertion that the Union Defendants cannot establish that defense because they have not proven that they complied with *Abood* and its pre-*Janus* progeny, which required that fair-share fees could be assessed only in support of the union's collective-bargaining functions. Pl. Br. at 40-42.

Neither Plaintiff's complaint nor her brief contains any factual allegation that the Union Defendants failed to comply with *Abood* in any particular respect; nor is there even a general allegation that they failed to do so. In any event, the contention that Defendants cannot invoke the good-faith defense without proving affirmatively that every pre-*Janus* union expenditure was correctly charged is an

analytical non-sequitur. The defense turns not on some "clean hands" notion of good faith but rather, as discussed above, on Defendants' reliance on existing law. As the district court explained in *Mooney*, where the same argument was advanced:

> The good-faith defense requires only the alleged unlawful conduct – here the taking of fair-share fees – be done in good faith.... If Defendants improperly spent the fair-share fees, Plaintiff would have an independent *Abood* claim but it would not render the exaction of the fee an act in bad faith. Plaintiff cannot embed an *Abood* claim in a *Janus* claim and thereby shift the burdens of pleading, proof, and persuasion.

372 F. Supp. 3d at 706; *see also Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1007 (D. Alaska 2019) (rejecting the same contention "that discovery is needed on a different claim for different relief on a different class before the court can apply the good-faith defense").[15]

### F.    Plaintiff's Argument Rests on a Superficial Understanding of the Supreme Court's Retroactivity Jurisprudence

The premise of Plaintiff's claim for repayment of the fair-share fees remitted prior to the *Janus* decision is, as she states in the second sentence of her brief, that

---

[15] Plaintiff is, moreover, precluded by a prior class-action settlement in *Thaxton v. Ohio Education Association*, No. 2:11-cv-00707 (S.D. Ohio Aug. 4, 2011), from claiming that the Union Defendants improperly assessed fair-share fees in violation of *Abood*. That settlement "determine[d] the procedures and methods of calculations to be used in the future to fix, assess, and collect the nonmember fees of Defendants," and it provided that class members – including Lee, *see Thaxton* Dkt. 87-2, at 1 – could contest them only through the settlement agreement's dispute-resolution procedures (which were not invoked here). *Thaxton* Dkt. 78-1 (Settlement Agreement) at 9, 10.

"[t]he holding of *Janus* is retroactive." Pl. Br. at 1. She opens her Argument with the contention that "[t]he union 'deprived' Ms. Lee of her constitutional rights" – even though fair-share requirements were lawful and constitutional at the time – "because the Supreme Court's ruling in *Janus* is retroactive." *Id.* at 11. To deny her the relief she seeks is, she says, "to deny the retroactivity of *Janus*." *Id.* at 36.

The beginning, middle, and end of Plaintiff's analysis of this issue of retroactivity is her repeated citation to a sentence in *Harper* stating that "a rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law." *See* Pl. Br. at 1 n.1, 11 n.4, 15 n.7 (all quoting 509 U.S. at 96). That is indeed a correct statement of the law, but it is merely a starting point for analysis; standing alone, it reflects an over-simplified understanding of the Supreme Court's retroactivity jurisprudence. We conclude by briefly reviewing the Court's retroactivity decisions and their applicability to this case.

1.    Prior to the early 1990's, the Supreme Court applied a multi-factor approach, articulated in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), to determine whether its decisions should be applied retroactively to other pending cases. But in a line of cases culminating in *Harper*, the Court held that if it applied a newly enunciated rule to the parties before it, that rule must also be applied in any other pending case. This holding amounted to a rejection of what the Court

44

described as "selective prospectivity," under which the new rule was applied only to the parties in the case before it, while the previous rule was left in place with respect to other pending cases "arising on facts predating the pronouncement." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 537 (1991) (plurality op.). While rejecting selective prospectivity, the Court left open, in cases in which it announced a new rule of law, the options of "full retroactivity" and "pure prospectivity." *Id.* at 535-37; *see Harper*, 509 U.S. at 96 (new rule applies retroactively to other parties "once … applied to the parties to the controversy"); *see also Felzen v. Andreas*, 134 F.3d 873, 877 (7th Cir. 1998) (noting that *Harper* and *James B. Beam* left in place the option of purely prospective overruling); *Nunez-Reyes v. Holder*, 646 F.3d 684, 690-91 (9th Cir. 2011) (same).

In reaching that result, the Court emphasized that its holding with regard to the retroactivity of its decisions did not determine the appropriate remedy in any particular case. Thus, in *James B. Beam* – the case that immediately preceded *Harper* in this series of decisions – the Court described the retroactivity issue as a question of "whether the court should apply the old rule or the new one," and thus "as a matter of choice of law." 501 U.S. at 534-35. Making such a choice was necessary "when a court expressly overrules a precedent upon which the contest would otherwise be decided differently and by which the parties may previously have regulated their conduct." *Id.* at 534.

45

The Court recognized, however, that this choice-of-law issue was only the initial question, not the final word on the outcome of the case:

> Once a rule is found to apply "backward," there may then be a further issue of remedies, *i.e.*, whether the party prevailing under a new rule should obtain the same relief that would have been awarded if the rule had been an old one.

*Id.* at 535 (citation omitted). The Court recognized that a holding that a new rule "should apply retroactively to claims arising on facts antedating that decision," *id.* at 532, was "confined entirely to an issue of choice of law," *id.* at 544, and it emphasized that "[n]othing we say here deprives respondents of their opportunity to … demonstrate reliance interests entitled to consideration in determining the nature of the remedy that must be provided." *Id.*

The Court made the same point in the case immediately following *Harper*, in which it explained that there would be circumstances under which the "retroactive" application of a new rule, "for well-established legal reasons, does not determine the outcome of the case." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995). That could include, among other considerations, the situation where there is "a previously existing, independent legal basis (having nothing to do with retroactivity) for denying relief." *Id.* at 759.

And the Court has, more recently, re-emphasized this point, and particularly the distinction between "retroactive application" and the "appropriate remedy." As Justice Alito explained for the Court in *Davis v. United States*, 564 U.S. 229

46

(2011), "[r]etroactive application [of a new rule] does not … determine what 'appropriate remedy' (if any) the defendant should obtain…. Remedy is a separate, analytically distinct issue." *Id.* at 243. While *Davis* addressed retroactive application of a new rule in the criminal-law context, the Court buttressed its analysis by citing *American Trucking Ass'ns v. Smith*, 496 U.S. 167 (1990) – a civil retroactivity case in the line that led to *Harper* – for the proposition that "[t]he Court has never equated its retroactivity principles with remedial principles." *Davis*, 564 U.S. at 243 (quoting *Smith*, 496 U.S. at 189).

  **2.** This review of the Court's retroactivity jurisprudence makes two points clear. First, as a preliminary observation, *Harper* and the Court's other cases rejecting selective prospectivity do not in themselves determine whether a new rule articulated by the Court – particularly when an old rule of law has been overruled – is to be applied "retroactively" to conduct that occurred under the old rule, whether as to the parties in the case before the Court or otherwise. Thus, in *Janus* the Supreme Court overruled *Abood* and announced a new constitutional rule, but it did not order any particular relief with respect to the parties before it. Rather, the Court simply ordered that "the case is remanded for further proceedings consistent with this opinion." 138 S. Ct. at 2486.

  Under these circumstances, several of the courts addressing claims based on fair-share fees collected before June 27, 2018 have questioned whether, even

putting aside the good-faith defense, an award of retrospective monetary relief would be appropriate – suggesting that, "[a]t least in situations where the Supreme Court has reversed a prior ruling but not specified that the party before it is entitled to retrospective monetary relief, it seems unlikely that lower courts should even consider awarding retrospective monetary relief based on conduct the Court had previously authorized." *Hough v. SEIU Local 521*, 2019 WL 1274528, at *1 (N.D. Cal. Mar. 20, 2019); *see also Mooney*, 372 F. Supp. 3d at 707 (finding *Hough*'s reasoning "deeply persuasive"); *Babb*, 378 F. Supp. 3d at 876.

But the more important point is this: Even assuming *arguendo* that *Janus* were applied retroactively, the new rule announced by the Supreme Court in that case does not "determine the outcome of the case," because it does not preclude the application of some "independent legal basis … for denying relief." *Reynoldsville Casket*, 514 U.S. at 759. As explained above, the good-faith defense is just such an independent basis for denying the remedy Plaintiff seeks – one that appropriately takes account of the Union Defendants' reliance on a presumptively valid state statute authorizing the assessment of fair-share fees and on a controlling decision of the Supreme Court upholding the constitutionality of such statutes. It thus requires rejection of Plaintiff's claim, even on the assumption that *Janus* is to be applied retroactively.

48

## II.    PLAINTIFF HAS NO CLAIM UNDER STATE TORT LAW

In her complaint Plaintiff also asserted state-law claims that the pre-*Janus* collection of fair-share fees violated the Ohio Constitution and multiple tort laws. Complaint ¶¶ 30-31, RE 1, Page ID #7. Of these, only the claim of conversion remains on appeal. *See* Pl. Br. at 43-44. Without at any point attempting to demonstrate how the collection of fair-share fees constituted conversion – or even identifying the elements of that tort – Plaintiff's brief principally asserts that she preserved this claim and that "the district court erred by refusing to address it." *Id.* at 44.

The latter assertion, first of all, is mistaken. Although Judge Adams obviously did not believe that Plaintiff's tort claims merited extended discussion, he disposed of them by citing and incorporating the rationale of the *Crockett* decision "finding no state law mechanism to allow for the recovery of past-paid fees." Memorandum of Opinion, RE 56, Page ID #725. The *Crockett* court observed that "there can be no common law liability for conduct authorized by state statute," and that *Janus* "does not change the fact that [the fair-share statute] displaced any state common law tort claims that could have been brought with regard to fair-share fees collected prior to *Janus*." 367 F. Supp. 3d at 1008-09.

Nor could Plaintiff state a claim for conversion in any event, for at least two reasons. First, an action for conversion of money will not lie under Ohio law unless

"the money involved is 'earmarked' or is specific money capable of identification, such as money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered." *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81 (S.D. Ohio 1996). More fundamentally, there was no "wrongful act," *6750 BMS*, 62 N.E.3d at 934, in the unions' receipt of fair-share payments from government officials pursuant to the specific provisions of state law. *Janus* does not change the fact that – as a matter of Ohio law – there existed legal justification for the deduction and transmission of fair-share fees at the time when they were paid to the defendant unions. Plaintiff's assertion that this transaction, concededly fully lawful when it took place, can "retroactively" become a "wrongful act" years after the fact, only underscores the serious threat to the rule of law posed by the legal theory on which this lawsuit is based.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

 /s/  John M. West
JOHN M. WEST
LEON DAYAN
JACOB KARABELL
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street N.W., Suite 1000
Washington, DC  20005
(202) 842-2600
jwest@bredhoff.com
ldayan@bredhoff.com
jkarabell@bredhoff.com

EBEN O. MCNAIR, IV
TIMOTHY GALLAGHER
Schwarzwald McNair & Fusco, LLP
1215 Superior Avenue East, Suite 225
Cleveland, OH  44114
(216) 566-1600
emcnair@smcnlaw.com
tgallagher@smcnlaw.com

JASON WALTA
National Education Association
1201 16th Street N.W.
Washington, DC  20036
(202) 822-7035
jwalta@nea.org

*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Brief of Defendants-Appellees complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i). The brief was prepared in 14-point Times New Roman font, and with the exception of the portions excluded by F.R.A.P. 32(f) it contains 12,851 words.

 /s/  John M. West
JOHN M. WEST

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2019, the foregoing Brief of Defendants-Appellees was electronically filed with the Clerk and served through the CM/ECF system upon counsel as follows:

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, TX  78701
(512) 686-3940
jonathan@mitchell.law
*Counsel for Plaintiff-Appellant*

William L. Messenger
National Right to Work Foundation
8001 Braddock Road, Suite 600
Springfield, VA  22160
(703) 321-8510
wlm@nrtw.org
*Counsel for Amicus Curiae*

 /s/  John M. West
JOHN M. WEST

# ADDENDUM

**DESIGNATION OF RELEVANT DOCUMENTS
FROM THE DISTRICT COURT RECORD**

| Record Entry | Document Description | Page ID # |
|---|---|---|
| 1 | Complaint | 1-11 |
| 48-2 | First Amended Complaint | 508-19 |
| 57 | Judgment | 728 |
| 56 | Memorandum of Opinion and Order | 724-27 |
| 58 | Notice of Appeal | 729-31 |
| 1-2 | Collective Bargaining Agreement (Complaint Exhibit 2) | 14-158 |
| 36-2 | Declaration of Robert Scott | 345-47 |
| 37-2 | Declaration of Kristy Spires | 377-85 |